JOHN F. FENNO v. JEHIEL WESTON.

*Sale.    Evidence.    Silence.*

Where one party writes to another simply that he will buy certain property of him at a certain price, and the other party replies by letter that he may have the property if he will come for it, these letters do not of themselves constitute a contract of sale.

The omission of a party to reply to statements in a letter about which he has knowledge, and which, if not true, he would naturally deny, when he replies to other parts of the letter, is evidence tending to show that the statements, so made and not denied, are true.

So also, when there has been a correspondence between parties in regard to some subject matter, and one of the parties writes a letter to the other, making statements in regard to such subject matter of which the latter has knowledge, and which he would naturally deny, if not true, and he wholly omits to answer such letter, such silence is admissible as evidence tending to show the statements to be true.

But all such evidence is of a lighter character than silence when the same facts are directly stated to the party.

This was an action for the false warranty of a mare. Plea, the general issue and trial by jury at the January Term, 1858, of the Orange County Court,—BARRETT, J., presiding.

On trial the plaintiff gave evidence tending to prove, among other things, that in August, 1854, he resided in Massachusetts, that one Kibbee, a neighbor of the plaintiff, being about to come to Vermont to buy a horse, was requested by the plaintiff to see if he could find a suitable one for him also ; that Kibbee came to Randolph in this State, where he saw the defendant and examined a young horse and a young mare, which the defendant owned, and informed the defendant that the horse suited him and that he thought a friend of his, meaning the plaintiff, would like the mare ; that Kibbee told the defendant that he would, on his return to Massachusetts, describe the mare to the plaintiff, and if he liked her, he, Kibbee, would write to the defendant ; that on his return he did describe her to the plaintiff, from which description the plaintiff concluded to buy her, if, on seeing her, she answered Kibbee's description ; that thereupon on the 10th of August, 1854, Kibbee wrote to the plaintiff as follows : " I have

concluded to give you three hundred dollars for your two colts, that I looked at ; if you say I may have them, let me know as soon as possible and you shall have your money." This letter was put into the case as evidence by the defendant. The plaintiff's evidence further tended to show that the defendant replied to this letter that Kibbee might have the two horses for three hundred dollars, if he would come for them ; that, thereupon, on the 13th of September, 1854, Kibbee and the plaintiff went to the defendant's house for the purpose, on the part of the plaintiff, of seeing the mare, and of purchasing her if she suited him ; that he did purchase her of the defendant for one hundred and seventy-five dollars, and paid him for her, the defendant warranting her sound in all respects, and that at the same time Kibbee purchased the horse of the defendant for one hundred and twenty-five dollars, and that they drove the two horses together home to Massachusetts ; that on arriving at home the plaintiff, who was unskilled in horses, procured his friends to examine the mare, and that she was discovered to have ringbones on each of of her hind ancles, which made her unsound, and largely diminished her value ; that thereupon the plaintiff· wrote the defendant a letter, dated September 20th, 1854, which the defendant, in making his defence, put into the case, and which was to the effect that the mare had ringbones, and was unsound, that the plaintiff bought her of the defendant upon the latter's warranty of her soundness, and requested the defendant to take the mare and pay back the plaintiff his money, or to give the plaintiff fifty dollars for breach of the warranty, the plaintiff retaining the mare ; that the defendant replied to this letter by one dated September 27th, 1854, which letter the plaintiff produced at the defendant's request, and was put into the case by the latter, and which was to the effect that the mare had not ringbones, that ringbones made horses lame several months before they were visible, that the mare had never been lame while the defendant owned her, and that he did not consider himself responsible for the mare's safe arrival at the plaintiff's residence.

This letter contained no denial of or allusion to the statements in the plaintiff's letter in regard to *his* having purchased the mare of the defendant, or the latter's warranty of her soundness.

The plaintiff also testified that he wrote to the defendant three other letters, dated respectively September 29, 1854, October 29, 1854, and September 10, 1856, all of which the defendant produced and put into the case.

These letters were of a similar tenor to the one of September 20th, 1854, claiming a warranty of the mare by the defendant to the plaintiff, a breach of the warranty on account of her unsoundness, and making a demand on the defendant for a return of the price of the mare, or the payment of a sufficient sum in damages for the breach of the warranty.

To all these letters the defendant conceded that he made no reply.

The plaintiff also gave evidence tending to show admissions of the defendant in conversation with others, that he sold the mare to the plaintiff as a sound mare, and that the mare was in fact unsound at the time of the sale.

The defendant, among other things, gave evidence tending to show that he did not sell the mare to the plaintiff, but that he sold both the mare and the horse to Kibbee; that this sale was consummated by Kibbee's letter to the defendant, dated August 10, 1854, and the latter's reply thereto; and that he delivered the mare to Kibbee in pursuance of the contract so made by those letters; that he did not warrant the mare to be sound, and that she was in fact sound at the time of the sale.

The court, among other things not objected to, charged the jury that Kibbee's letter of August 10, 1854, and the defendant's reply thereto, were proper evidence to be considered by them in determining whether the mare was sold by the defendant to the plaintiff or not; that they tended to show a bargain for the sale of both the horses to Kibbee, and that if they found that they were in fact sold and delivered by the defendant to Kibbee, the plaintiff was not entitled to recover; that the bargain evidenced by these two letters did not in fact transfer the title to the property from the defendant to Kibbee, until there was either a delivery of the property on the one hand, or a payment on the other, in pursuance of the bargain; that if the jury found from the evidence that instead of consummating the bargain between Kibbee and the defendant, indicated by these letters, a new negotiation

Fenno *v.* Weston.

was entered into in regard to the horses, which resulted in the sale, delivery and warranty of the mare to the plaintiff by the defendant, then if they found her to have been unsound at that time, the plaintiff would be entitled to recover.

In respect to the letters written by the plaintiff to the defendant, and the defendant's letter to the plaintiff, dated September 27, 1854, the court instructed the jury that having been put in by the defendant, they were proper evidence for them to consider in connection with the other evidence in the case, bearing upon the question whether the plaintiff bought the mare of the defendant; that though the statement made by the plaintiff of his understanding would not tend to show what the understanding of the defendant was upon the same subject, still, if that statement was made by the plaintiff to the defendant, the manner in which he treated that statement, either by reply or by silence, might entitle it to consideration as evincing the understanding of the defendant on the same subject; that there was a class of cases in which the silence of a party would affect him more or less strongly, according to the circumstances attending; that for illustration, if a party stands by and knowingly sees another sell and take pay for a piece of his property without giving any notice of his claim or interest in this property, to a third person purchasing in good faith, and supposing the seller owns and has a right to sell the same, he will be estopped to assert ownership in that property as against such purchaser; again, that if a party stands by and hears a representation made as to a transaction in which he is interested, and about which he has full knowledge, under circumstances calculated to elicit, and likely to call forth a reply, if the representation were not correct, and he makes no reply, the fact of his silence may, in connection with the circumstances, have the effect of an admission that the representation was correct, and therefore proper to be considered by the jury, when the question of what that transaction was, comes in controversy between him and the other party in interest, and it will derive more or less force as an admission depending upon the occasion, as calling for a the representation was incorrect; that in this latter class of cases the evidence does not operate to estop the party as in the first, but bears merely as evidence tending to show what was really the trans-

action in question; that in this case these letters and the answer to one and the neglect to answer the others, were to be considered by the jury in much the same light as if, instead of writing, the parties had met from time to time, at the times and under the circumstances in which these letters were written, and the plaintiff had said to the defendent substantially what is contained in the letters, and the defendant had replied, and kept silence or refrained from replying in the manner he has done in respect to the letters written to him by the plaintiff; that under these instructions the jury would consider these letters in connection with the other evidence in the case as bearing upon the question, whether the defendant sold the mare to the plaintiff, and give them the effect, which as evidence, they produced upon their minds upon that question.

To the portion of the charge above detailed the defendant excepted.

*C. W. Clarke* and *P. Perrin*, for the defendant.

1. The jury should have been instructed that the title to the horses passed to Kibbee by the contract evidenced by the latter's letter, dated August 10, 1854, and the former's reply thereto ; that the bargain and sale was completed for that purpose, but that it was competent for the parties to abandon that contract, and make a new one, and that if the jury believed that at the meeting of the plaintiff, the defendant and Kibbee at the defendant's house on the 13th of September, 1854, the parties did in fact abandon that contract and make another by which the defendant sold the mare to the plaintiff, then that issue should be found for the plaintiff.

2. The court erred in instructing the jury that the neglect of the defendant to answer two of the plaintiff's letters, and his omission in his answer to the other to allude to the statements of the plaintiff therein, in relation to the sale of the mare to him, were to be regarded as admissions that he sold the mare to the plaintiff and not to Kibbee, and also in charging the jury that these circumstances were to be considered equivalent to a similar neglect to reply to such statements if made by the plaintiff to the defendant in the course of a conversation between them.

There is no analogy whatever between the case of a statement made face to face with a man, and one made to him by letter. *Vail* v. *Strong*, 10 Vt. 457 ; 1 Greenl. Ev. 197 ; *Mattocks* v. *Lyman et al.*, 16 Vt. 113 ; *Fairlee* v. *Denton*, 3 C. & P. 101 ; *Hill* v. *Pratt*, 29 Vt. 119.

*William Hebard*, for the plaintiff.

ALDIS, J.    To sustain this action it became necessary for the plaintiff to show a sale of the horse to him from the defendant. In the course of the trial among other evidence of a sale the defendant introduced a letter from one Kibbee to the defendant, dated August 10, 1854 in which he says: " I have concluded that I will give you three hundred dollars for your two colts that I looked at—if you say I may have them let me know as soon as possible, and you shall have your money."    The defendant wrote in reply " that he might have the horses for three hundred dollars if he would come for them."

Before Kibbee wrote to the defendant he had a negotiation with him in regard to the horses, and then told him that he wanted one of the horses for himself, and that he had a friend in Massachusetts who might want the other, and that upon his return he would tell his friend of the other horse, and if it suited him he would write the defendant.

After receiving the defendant's letter, Kibbee and his friend (the plaintiff) came to Randolph and looked at the horses, and the evidence tended to show that the plaintiff purchased the horse in question of the defendant and paid him.

The defendant claimed that he sold the horse to Kibbee, and not to the plaintiff, and that Kibbee's letter of August 10, and his reply, constituted the contract of sale and passed the title of the horse in question to Kibbee ; and that the court should so instruct the jury.

The court declined to do so.    The charge as given we think correct.

The two letters were evidence tending to show a sale to Kibbee, but nothing more.    They do not on their face purport a sale. The letter of Kibbee's is an offer to buy at a price named, but

nothing is said as to the place of delivery of the horses. This was an important point; for the seller lived in Vermont, the purchaser in Massachusetts. The reply of the defendant accepts the offer of Kibbee upon condition that he would come for them. Thus far the trade is not closed, for Kibbee may refuse to come for them. His offer did not say he would. And thus matters stand when Kibbee and Fenno came to Randolph. Clearly the letters make no contract of sale. When the parties met they were at liberty to close that trade, or to make a new one, as they pleased. The evidence was conflicting as to what they did. It was a question of fact, and properly submitted to the jury by the court upon all the evidence in the case.

It is unnecessary therefore to inquire whether the title to a specific chattel can pass by bargain and sale without payment or delivery, for in this case the letters on their face show there was no bargain closed till the time when the horses were paid for and delivered.

II. The plaintiff, on discovering the unsoundness of the horse, wrote to the defendant several letters, the purport of which was that the plaintiff, having bought the horse of the defendant upon a warranty of soundness, claimed damages for the breach of warranty. The defendant replied to the first letter denying that the horse was unsound, and saying nothing as to whether he sold the horse to the plaintiff or Kibbee. To the other letters he made no reply.

We do not think that the use of the word " admission" in the charge of the court, taken in connection with the rest of the charge, could have misled the jury, or that they were influenced by it to attach any more weight to this evidence than properly belonged to it.

It is further claimed by the defendant that the court instructed the jury that the defendant's silence in the letter he wrote to the plaintiff upon the point whether he sold the horse to *him* or not, and his omission to answer the plaintiff's subsequent letters were to have *the same* weight as evidence that they would have if the

plaintiff and the defendant had personally met, and the plaintiff had said to the defendant what he wrote to him.

The omission of a party to reply to statements in a letter about which he has knowledge, and which if not true he would naturally deny, when he replies to other parts of the letter, is evidence tending to show that the statements so made and not denied are true. So where there has been a correspondence between parties in regard to some subject matter, and one of the parties writes a letter to the other making statements in regard to such subject matter, of which the latter has knowledge, and which he would naturally deny if not true, and he wholly omits to answer such letter, such silence is admissible as evidence tending to show the statements to be true. Still all such evidence is of a lighter character than silence when the same facts are directly stated to the party. Men use the tongue much more readily than the pen. Almost all men will reply to and deny or correct a false statement verbally made to them. It is done on the spot and from the first impulse. But when a letter is received making the same statement, the feeling, which readily prompts the verbal denial, not unfrequently cools before the time and opportunity arrive for writing a letter. Other matters intervene. A want of facility in writing, or an aversion to correspondence, or habits of dilatoriness may be the real causes of the silence. As the omission to reply to letters may be explained by so many causes not applicable to silence when the parties are in personal conversation, we do not think *the same* weight should be attached to it as evidence.

Where the party replies to the letter, but says nothing upon points which he would naturally contradict if untrue, as, in this case, in Weston's reply to Fenno's first letter, the silence furnishes stronger proof of acquiescence in the alleged facts than the subsequent entire omission to reply.

In *Hill* v. *Pratt*, 29 Vt. 126, the language of the learned judge in giving the opinion in the the case seems to go further than the facts of the case required. The defendant wrote to the plaintiff saying he had served the writ according to their instructions, and as they did not reply it was claimed to show that they acquiesced

Fenno *v.* Weston.

in the statement made in his letters. But the case further says: it was conceded that the defendant had no such instructions. Such a concession would necessarily contradict all idea of acquiescence implied from not answering the letter.

In *Fairlee* v. *Denton et al.*, 3 Car. & P. 103, the plaintiff wrote a letter to the defendant demanding a sum of money as due to him, to which the defendant made no reply. Such a case of a bare naked claim by letter, without being accompanied by any correspondence whatever between the parties, is clearly distinguishable from the case at bar.

We do not understand that the county court in this case charged the jury that the answer, and the omission to answer, were to be considered as of the same weight as if the parties had personally met, and the same answers and omissions to answer had then occurred. The court illustrated their views of the effect as evidence of the silence of a party when he ought to speak, and of the circumstances from which it would derive more or less force, and finally remarked that "the letters, the answer to one and the neglect to answer the others might be considered in much the same light as if the parties had met from time to time," etc. The expression so used do not convey the idea that this kind of evidence is entitled to the *same* weight, as silence under false charges in conversation ; although some modification of the language, if standing alone, would seem to be required to preclude all chance of error. But, when taken in connection with the illustrations given by the court and the other evidence, we do not think it so likely to have misled the jury as to justify us in opening the case.

The judgment of the county court is affirmed.