## STATE v. R. M. MINOR AND OTHERS.[1]

### May 1, 1925.

### No. 23,866.

**Prosecutor not subject to criticism for reference made to accused.**

1. The defendant in a criminal case who, though not sworn as a witness, vouches openly and with testimonial effect for the authenticity of a document admitted in evidence, cannot complain if the prosecutor, in discussing such evidence, suggests that the defendant in question was not sworn at any time during the trial.

**Conduct of prosecutor not prejudicial to accused.**

2. Under the circumstances of this case, dealt with in the opinion, the conduct of the county attorney is *held*, so far as it was misconduct, not to have been prejudicial or such as to compel a new trial.

1. See Criminal Law, 17 C. J. p. 209, § 3555.
2. See Criminal Law, 17 C. J. p. 298, § 3638.

[1]Reported in 203 N. W. 596.

Defendants were indicted by the grand jury of Hennepin county charged with the crime of criminal libel, tried together before Nye, J., and a jury which returned a verdict of guilty as charged in the indictment. Defendants Minor, Sullivan and Reichert appealed from an order denying their separate motions for a new trial. Affirmed.

*Donald H. Hughes*, for appellants.

*Clifford L. Hilton*, Attorney General, and *Floyd B. Olson*, County Attorney, for respondent.

STONE, J.

Defendants appeal from the order denying a new trial after conviction of criminal libel, committed, according to indictment and proof, by the publication on April 10, 1923, in a paper entitled "Voice of the Knights of the Ku Klux Klan," of charges derogatory to the personal and official character of George E. Leach, then and now mayor of Minneapolis.

It is not seriously suggested that the evidence does not sustain the verdict. The charges published were libelous per se. They were not privileged under section 10113, G. S. 1923, whereby such a publication is "deemed malicious if no justification or excuse therefor is shown." The attempt to justify or excuse the publication was a failure. The falsity of the charge and the authorship of defendants are established by the verdict.

The issues on this appeal are so limited that extended statement of facts is uncalled for. There is very little testimony indicating truth so far as the libel reflected upon the personal character of its principal target. There was an abundance calculated to show the organization of vice in Minneapolis—particularly that proprietors of public gambling houses regularly paid city officials for "protection." This evidence reflected much on a former chief of police, but of course it was also attempted to involve the mayor; he was a candidate for re-election in the city campaign then pending. Thus a trial on a single indictment was converted into a general overhauling of local political issues and an extended airing of somewhat soiled

political linen. That character was given to it, initially, by counsel for the defense.

The assignments of error, so far as they require consideration, have to do wholly with alleged misconduct of the county attorney. The charges against him are so numerous they cannot be discussed in detail within the proper limits of this opinion. They have all been considered, and, while there is much subject to criticism, we find nothing requiring a reversal.

It is claimed that the county attorney alluded to the failure of defendants, or some of them, to testify in their own behalf. Section 9815, G. S. 1923, provides that the failure of a defendant to testify shall not create any presumption against him and concludes with the significant language, "nor shall it be alluded to by the prosecuting attorney or by the court." Concerning defendant Minor, the county attorney did say, during his argument to the jury, that "he was not under oath at that time nor at any other time." The circumstance thus referred to was the use in evidence of what purports to be a copy of the oath of the Ku Klux Klan. The authenticity of the document was vouched for openly and voluntarily by Mr. Minor. His statement is a part of the evidence. It has been so considered by court and counsel. In that situation, the spirit of the statute if not the letter requires a holding that the prosecuting attorney was within his right when he invited the attention of the jury to the fact that the statement lacked the sanction of the oath of the party who made it. A defendant need not testify. He may sit silent during the entire trial. If he does so, he maintains intact the protection which the statute gives him. But, if he volunteers under oath or otherwise any statement intended to have and having testimonial effect, he cannot object if it is made the subject of fair comment, including one that it was not made under oath.

The operation of the statute upon such situations is not governed by "too strict an application of the rules of criminal practice and procedure wholly unnecessary for the protection of the legal rights of an accused person or to a substantial administration of our criminal law." State v. Crawford, 95 Minn. 467 (471), 104 N. W. 295. "The statute must be given a fair and reasonable construction."

Sample v. State, 52 Tex. Cr. 505, 506, 108 S. E. 685, 124 Am. St. 1103. That was a case of aggravated assault; and it was held not a violation of the statute for the county attorney to remind the jury that no witness contradicted the testimony of the prosecutrix—although the only direct contradiction possible was from the defendant himself and he had not taken the stand. To give the statute the effect of preventing such relevant general comment the court thought "would be tantamount, practically, to almost preventing a discussion of the case with reference to the testimony of the state's witness, when only one witness was used, defendant being the only other witness who could testify to the same facts."

It is next urged that it was misconduct for the county attorney to comment adversely on the failure of the Knights of the Ku Klux Klan to support the defense openly and effectively with proof of the charges made in their publication and apparently through their agency. We see no objection to that argument. Certainly it was not misconduct. The libel was published by the "Voice" of a powerful organization. There is proof that defendants were its instruments and defendant Minor a "Cyclops." It does not follow from the freedom of defendants from comment on their failure to testify, that the organization which used them had a similar immunity from pertinent criticism of its omission to support, openly and with proof, the individuals thus used for its purpose.

So we think the county attorney was within his rights in referring to the one defendant who did take the stand as "a fine mouthpiece to put upon the stand, and the only mouthpiece of this distinguished coterie of scandal passers," reference being to "those members of the Klan .* * * (who) have been as invisible in this lawsuit as is the principle of their organization." If that statement included any of the defendants who did not testify, it was indirect and incidental to proper comment upon the failure of the Klan to support, by proof, when under attack in court, the charges published by its "Voice."

It is argued further that it was misconduct for the prosecutor to refer, in terms far from commendatory, to the supposed agency of the Klan in the publication of the libel. It was termed the "in-

visible government." Aside from the popular notion that this is but one of the Klan's ways of characterizing itself, it ought to be stated, to make understood the issue under consideration, that there was a good deal of the "invisible" about the publication in question. The paper itself was plainly labeled "Voice of the Knights of the Ku Klux Klan" and stated that it was issued by North Star Klan No. 2 of Minneapolis "with the assistance" of 14 others in that city and its suburbs. The only copy before us does not frankly or at all disclose the identity of any individual or individuals responsible legally or morally for its contents. Nor does it state the location of the office where it was printed and from which it was circulated. In fact, the issue of April 10, 1923, was gotten out as a piece of job work. Following somewhat the example of the ordinary nocturnal scandal sheet, it was put out clandestinely and circulated by mysteriously summoned carriers "under the covering of a careful night." Those desiring to avoid the characterization of their operations as "invisible," particularly a society professing purposes of high Americanism, should adopt a more courageous and American procedure. True, defendants and not the Klan were on trial, but they were its instruments, so the proof tended to show, and cannot complain of allowable comment on the organization which they permitted to use them.

Another consideration weighing against the argument of counsel for the defense is that the record shows him to be somewhat endowed with the same tendency to transgress the proprieties with which he so largely credits the county attorney. He seems to have been as capable as his adversary in departures from propriety and had the closing argumnet. He invited reprisal and by reason of his own conduct is not in a very good position to complain. The thing we wonder at is that counsel, on both sides, were permitted to go as far as they did. There is no occasion to discuss the rules governing trial advocacy. They are dealt with at length in State v. Bernstein, 148 Minn. 301, 181 N. W. 947.

We have gone over the record carefully and are satisfied that the defense was not prejudiced by anything for which the prosecutor was responsible. The conduct of the case for the defense was of

such a nature as to prejudice the jury hopelessly one way or the other. As not infrequently happens, the result of such tactics may have been the reverse of that intended.

Affirmed.