STATE v. EDWARD ZEMPLE.[1]

January 10, 1936.

No. 30,738.

*Pfaender & Glotzbach,* for appellant.

*Harry H. Peterson,* Attorney General, *Roy C. Frank,* Assistant Attorney General, and *C. A. Johnson,* County Attorney, for the State.

HILTON, JUSTICE.

An appeal from an order of the district court refusing defendant a new trial after conviction by a jury of the crime of arson in the

[1]Reported in 264 N. W. 587.

second degree, the charge being that he burned his wife's house, which at the time of the act was their joint abode.

On October 28, 1934, the defendant and his wife were living in a house owned by the latter and located in the city of Mankato, Minnesota. Living with them was the defendant's niece, Miss Ethel Zingler. The events hereinafter to be related all took place during the day above mentioned. About 10:30 a. m. Miss Zingler was in the basement of the house and saw nothing unusual. At 12 noon the defendant went into the basement and remained there five to ten minutes. Apparently no one else was in the basement until eight o'clock that evening. Shortly after noon the defendant, his wife, and Miss Zingler left Mankato for a Sunday afternoon automobile trip. They did not return until eight p. m. As they approached the house the defendant stated: "The old shack is still here." On their entering the house smoke was discovered. Defendant asked his wife if he should call the fire department and, on receiving an affirmative answer, did so. A small smouldering fire was discovered along the bottom of a partition in the vegetable cellar. This was easily extinguished. Much charcoal had been formed.

About ten p. m. the three persons hereinbefore mentioned carefully searched the entire house for signs of fire and found none. All went up into the attic. Near 12 midnight they again went up into the attic. Defendant then took some wallpaper, crushed it into three balls, and stuffed it between the partition. Miss Zingler stated to him, "Don't do that." The defendant made no answer. The three then went downstairs. Shortly thereafter defendant again went up into the attic, this time alone, and stayed there five to ten minutes. A few minutes after he had come down Miss Zingler heard a "crackling sound." Smoke was discovered, and the attic was found to be on fire. The defendant's wife drove their car out of the garage to a safe distance, and the defendant again called the fire department. The fire was soon put out.

Miss Zingler, principal witness for the state, further testified that defendant was "nervous and excited" on the automobile trip; that between the time of the first fire and the second one he paced

back and forth in the house; that in 1934 he had said that he would like to get rid of the property; that shortly after the fire he told her to tell the fire marshal that the fire had been set, but a few days later told her not to say anything to the county attorney, the sheriff, or to the fire marshal; that the attic was in a clean and orderly condition the day before the fire.

The fire in the basement had no visible connection with the one in the attic. The wiring and the chimney in the house were in good condition. A few days after the fire there was an inspection by an employe of the state fire marshal's office and the local city firemen. A charred box was discovered near where the partition in the basement had burned. Between it and the partition were several inches of ashes and charcoal. On top of this debris was the broken neck of a gallon glass jug. Smaller pieces and the bottom of a gallon glass jug were dug out of the accumulation. Several burnt matches were lying within a few feet of the seat of the fire and seven to eight feet from the furnace. A short distance from the burnt partition was a rubbish pile, and in it were two candles tied together with a string. They were tied in such a manner that the bottom of one extended beyond the bottom of the other, and were of a size which would allow the bottom end of one to fit snugly into the opening in the neck of the gallon glass jug. Defendant's wife testified that the candles had been tied together by her several years previously and were used to light the furnace and thaw out the water pipes. Miss Zingler had never seen the candles in the basement.

The most intense burning in the attic had taken place where the wallpaper had been stuffed into the partition, the fire even penetrating through the roof there. The fire seemed to have burned at three different places in the attic. A kerosene lamp was directly below the hole in the roof caused by the conflagration. Scattered around and near the lamp, as well as other places in the attic, were several pieces of burnt fabric, paper, excelsior, carpet material, and sheep-lined coat material. Smaller pieces of paper were found stuffed down between the rafters on the west and south side of the house.

Defendant did not take the witness stand. His wife was the only witness for him who gave any testimony that could possibly have any bearing on the issue of his guilt. She refuted some of the testimony of Miss Zingler, one of the 12 witnesses for the state, but the facts appear to be substantially as related. Shortly before the date of the fire the defendant increased the amount of fire insurance on the house from $2,300 to $4,000. The reasonable value of the house was about $3,000.

Defendant claims that the common law rule is in force in Minnesota by which a husband cannot be guilty of arson of his wife's building when it is their joint abode. In State v. Arnold, 182 Minn. 313, 319, 235 N. W. 373, 376, it was held that the larceny statute of this state does not apply to a married woman when accused of the theft of property from her husband. This was based on the rule that existed at common law. The court there stated that the use of the phrase "every person" in the larceny statute did not of itself make that defendant a criminal and that the married woman's act was not enough in itself to make the defendant there a criminal by implication as those "acts referred to civil rights and remedies only; they did not purport to create any public offense." Our arson statutes provide in part, 2 Mason Minn. St. 1927:

"10310. Every person who * * * 2. Shall wilfully burn or set on fire in the nighttime a dwelling house * * *

"Shall be guilty of arson in the second degree."

"10313. To constitute arson, it shall not be necessary that another person than the defendant should have had ownership in the building set on fire."

Several states hold that under their statutes a husband cannot be guilty of arson for the burning of a dwelling owned by his wife if it is their joint abode. However, it will be noticed that those statutes differ markedly from the one in this state. They all speak of the crime as being the wilful burning of the dwelling of "another." See Michigan Comp. L. 1857, § 5745; Snyder v. People, 26 Mich. 106, 12 Am. R. 302; Wisconsin St. 1898, § 4399; Kopcyznski v. State, 137 Wis. 358, 118 N. W. 863, 16 Ann. Cas. 865.

Other jurisdictions in which the statutes provide that "any person who shall wilfully burn any dwelling house" hold that a defendant may be guilty of arson for the burning of his wife's dwelling even if it is their joint abode. New Hampshire Gen. St. c. 262, § 1; State v. Hurd, 51 N. H. 176; see 4 St. 448 (Act of 1831, c. 37, § 3); United States v. McBride, 7 Mackey (18 D. C.) 371. In State v. Roth, 117 Minn. 404, 136 N. W. 12, 13, it was held that a husband could be guilty of arson for the wilful burning of his wife's building that was not occupied by them as their joint abode. There it was stated [117 Minn. 408]:

"The point is made that it was not arson for defendant to burn his wife's property. In view of our statutes in reference to the property of a married woman, it cannot be held that it was not the property of another than defendant."

That language is broad enough to do away with all common law limitations with respect to a husband's wilfully burning the property of his wife. However, our statute, §§ 10310, 10313, is of itself sufficient to abolish the common law rule. Whether we hold that under the married woman's act the house in question was the property of "another" or whether we hold that § 10313 is broad enough of itself so to do, a husband, in this state, may be held guilty of arson for the wilful burning of his wife's dwelling even if it is their joint abode. Under § 10313 one may be held for the wilful burning of one's own property. Certainly the crime is no less when the title stands in the name of the wife. The same act is done, and the danger to the public is just as great. To hold otherwise would work a travesty on justice. We fail to see in what way amicable family relationships will be destroyed by construing our arson statutes so as to include the husband when he tries to burn down the dwelling in which that relationship is supposed to exist.

Error is alleged in that the court permitted some partly burned matches, two candles, and the neck of a broken glass jar to be introduced into evidence as exhibits. These articles were found in the basement of the house several days after the fire. One of the candles was not in the same condition at the time of the trial as it was at

the time it was found. The change in condition was satisfactorily explained and the original condition fully pointed out. There was no reversible error here. These exhibits merely go to the showing of the origin of the first fire. They have no probative value whatever as to the origin of the second one. They were not found when the basement was first searched by firemen. The basement was not strongly lighted then, and a thorough search was not made. The exhibits were discovered only by the diligence of the fire inspectors in later looking through two piles of rubbish in the basement. There was no prejudicial error in the admission of these exhibits. See 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 3251.

Certain statements made by the county attorney during the course of the trial are claimed to be of sufficient prejudice to defendant so as to require a reversal. At one point the county attorney claimed that he heard the defendant call one of the witnesses a "damn liar." Whether or not the defendant did make such a statement is in dispute. The court instructed the jury to disregard it. The trial judge evidently believed that it was not prejudicial. Under such circumstances this court must rely a great deal on the judgment of the lower court. See 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7102, and cases there cited.

In his closing argument the county attorney stated: "There is just one man who can tell you how that fire started, and that man is no different from any other man who commits a crime." This is claimed to be in violation of our statute (2 Mason Minn. St. 1927, § 9815) which prohibits any allusion to the fact that the defendant in a criminal case has failed to take the stand. "The statute must be given a fair and reasonable construction." State v. Minor, 163 Minn. 109, 111, 203 N. W. 596, 597, citing Sample v. State, 52 Tex. Cr. 505, 506, 108 S. W. 685, 124 A. S. R. 1103. In the instant case the evidence was especially strong and convincing that defendant did do the acts with which he is charged. Aside from the remark of the county attorney, which perhaps was out of place, the evidence was more than sufficient to establish defendant's guilt beyond a reasonable doubt. In such a case the error is harmless.

State v. Ahern, 54 Minn. 195, 55 N. W. 959; State v. Nelson, 91 Minn. 143, 97 N. W. 652; State v. Cox, 172 Minn. 226, 215 N. W. 189. Affirmed.