STATE v. MAX YURKIEWICZ (ALSO KNOWN AS YORK).[1]

March 27, 1942.

No. 32,915.

1Reported in 3 N. W. (2d) 775.

See 208 Minn. 71, 292 N. W. 782.

*Samuel Saliterman,* for appellant.

*J. A. A. Burnquist,* Attorney General, *M. Tedd Evans,* Assistant Attorney General, *Ed J. Goff,* County Attorney, and *William G. Compton,* First Assistant County Attorney, for the State.

STONE, JUSTICE.

Convicted under the statute (Mason St. 1927, § 10219) of swindling, defendant appeals from the judgment. The motion for new trial was denied upon what we consider good grounds.

The case has been here before on the certification of certain questions arising on demurrer to the indictment. State v. Yurkiewicz, 208 Minn. 71, 292 N. W. 782. The allegations of the indictment are there summarized. In substance they were well established by the state's evidence at the trial. The crime of which defendant stands convicted was the swindling of one Beaudry by means of a combination investment and employment contract. The investment of the complaining witness, Beaudry, was to be made in the incorporated business of defendant known as "The Merit Fur Company."

Beaudry was first attracted to defendant by a "want ad" which he read late in December 1938. Dealings which immediately followed (of which more will be said later) resulted in an "agreement" dated January 3, 1939. By its terms, Beaudry was to acquire 20 preferred shares of $100 par value in the Merit Fur Company, "as and when paid for by him," $500 on execution of the agreement and $1,500 within one year thereafter. The stock was to be "held by him for the period of one year and if required by him Max Yorkiewicz [sic] agrees to redeem the said stock at not more or less than the sum of One Hundred Dollars per share." In return Beaudry was to receive eight per cent dividends and be employed by the company, beginning at $100 per month.

Beaudry made the required $500 investment and worked for the company for a few weeks subsequent to January 3 before, finally realizing the real situation, he decided to withdraw. During this time, the evidence is that he received not more than $23 in "salary" and nothing on his "investment."

As was his right, defendant did not take the witness stand. The testimony of his one witness is inconclusive. In the light of other facts, it is no cause for wonder that, with the jury, it did not help defendant. The evidence is conclusive of his guilt. In view of the extended statement of the case in our earlier decision, further narrative of details is unnecessary.

1. Defendant succeeded in swindling Beaudry early in January 1939. Evidence was admitted showing that during the autumn of 1938 he perpetrated similar frauds upon three employed women in Minneapolis. This evidence, admissible or not, must have been very damaging to defendant because of its tendency to place defendant in the lowest category of the swindling fraternity. Therein is no lower grade than that of those who prey upon the hard-earned savings of inexperienced, gullible, and hard-working women.

The evidence was properly admitted. True, it showed defendant's guilt of other crimes, and such evidence is ordinarily incompetent. But that rule has its exceptions, which embrace this case. Evidence of other crimes is admissible when it tends to establish

"a common scheme or plan embracing the commission of similar crimes so related to each other that proof of one or more of such tends to establish the accusation. Such is the common law." State v. Sweeney, 180 Minn. 450, 455, 231 N. W. 225, 227, 73 A. L. R. 380. None of the exceptions were present in State v. Fitchette, 88 Minn. 145, 92 N. W. 527; hence evidence of other crimes was there held inadmissible. In the present case, the logical tendency of the evidence of other crimes, substantially identical in purpose, substance, and means with that for which he was on trial, to prove his guilt of the latter is just too plain for reasonable question.

2. In the course of the charge, after a summary of evidence, to which there was no exception, the trial judge remarked: "It is not denied in this case he [defendant] made those statements." The reference was to the statements made by defendant to induce Beaudry to make his "investment." The judge's comment is assigned as error. The claim is that it violated Mason St. 1927, § 9815, giving a defendant the privilege of not taking the witness stand and prohibiting comment on his action if he does not testify. The answer is that the comment in question does not refer to defendant's failure to testify. This statute is no exception to the rule that what the legislature says is to have a fair and reasonable construction. State v. Zemple, 196 Minn. 159, 164, 264 N. W. 587. Very similar on this point is State v. McClain, 208 Minn. 91, 292 N. W. 753.

3. Over defendant's objection the state introduced three letters under dates of March 2, 6, and 10, 1939, written by Beaudry to defendant. At the time he wrote them, Beaudry had awakened to what was going on, rescinded his investment "agreement" with the corporation, and had reason to expect periodic repayments in accord with the agreement and conversations with defendant. The payments not forthcoming, the purpose of the letters was to get some action. Statements therein were self-serving. Standing alone, the letters were inadmissible under the rule that a letter, not part of a mutual correspondence, which is sent to another re-

garding the character of dealings between them or the liability of the party to whom it is addressed and to which no answer is made, is not admissible in favor of the writer as evidence of the truth of statements made therein. 20 Am. Jur., Evidence, § 961; Annotations, 8 A. L. R. 1163; 34 A. L. R. 560; 55 A. L. R. 460; see Wells-Dickey Trust Co. v. Lien, 164 Minn. 307, 204 N. W. 950.

That proposition is to be distinguished from the rule that "when a statement is made in the presence and hearing of an accused, incriminating in character, and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible on a criminal trial, as evidence of his acquiescence in its truth." Annotations, 80 A. L. R. 1235; 115 A. L. R. 1510; 20 Am. Jur., Evidence, § 570. Reason for this distinction is well stated in Fenno v. Weston, 31 Vt. 345, 352, where it is said:

"Men use the tongue much more readily than the pen. Almost all men will reply to and deny or correct a false statement verbally made to them. It is done on the spot and from the first impulse. But when a letter is received making the same statement, the feeling, which readily prompts the verbal denial, not unfrequently cools before the time and opportunity arrive for writing a letter. Other matters intervene. A want of facility in writing, or an aversion to correspondence, or habits of dilatoriness may be the real causes of the silence. As the omission to reply to letters may be explained by so many causes not applicable to silence when the parties are in personal conversation, we do not think the same weight should be attached to it as evidence."

So it is held, following the rule as to oral statements, that, to a letter, "an evasive answer, or one unresponsive to the declaration, is tantamount to absolute silence" and competent evidence of acquiescence. Annotation, 80 A. L. R. 1249. Obviously, where proper denial is made of written or oral accusations, there is no tacit or implied admission.

Beaudry's letter of March 10 was answered by defendant on the 14th with a letter stating, in part: "I have taken the time to thoroughly grasp the import of the several threats enumerated therein. I am, however, satisfied that there is a good reply to all, or any of your arguments were it necessary to do so." This, though somewhat evasive, was enough of denial to preclude reasonable claim of tacit admission of the truth of statements made in the letter replied to.

To the rule concerning unanswered letters, a well-settled exception is that such letters are admissible when their subject matter relates to an existing contract between the parties. 20 Am. Jur., Evidence, § 568; see Sonnesyn v. Hawbaker, 127 Minn. 15, 148 N. W. 476. In this situation the reason for the general rule vanishes. For example, see Ross v. Reynolds, 112 Me. 223, 91 A. 952; Keeling-Easter Co. v. R. B. Dunning & Co. 113 Me. 34, 92 A. 929.

The first two letters were unanswered. But a large part of them related to the investment agreement and surrounding circumstances. To that extent they were properly received.

Without further consideration of the question, we are compelled to deny a new trial. This court has long been committed to the attitude that "new trials should be granted only where the substantial rights of the accused have been so violated as to make it reasonably clear that a fair trial was not had." State v. Nelson, 91 Minn. 143, 145, 97 N. W. 652, 653. When, as here, the competent proof of defendant's guilt is convincing, we should not grant a new trial where the only error is the admission of evidence which, although incompetent, was not prejudicial, and the same facts are otherwise adequately shown. 2 Dunnell, Dig. & Supp. § 2490; State v. Crawford, 96 Minn. 95, 104 N. W. 768, 822, 1 L.R.A.(N.S.) 839; State v. Townley, 149 Minn. 5, 182 N. W. 773, 17 A. L. R. 253; State v. Duffy, 179 Minn. 439, 229 N. W. 558; State v. Zemple, 196 Minn. 159, 264 N. W. 587.

Much of the letters is statement of Beaudry's version of the whole affair. They abound with his conclusions concerning defendant's liability to civil action and threats of what Beaudry

proposed to do in the way of retaliatory measures, both civil and criminal. There is repeated reference to the investment agreement "containing the covenant that you [defendant] would buy back the stock purchased by me [Beaudry], refunding all moneys brought in by me, together with 8% interest," and "you have broken every covenant contained in this agreement, and you do not let me know what your intentions are." Each letter contains heated assertion of the falsity of the statements of assets contained in the 1937 and 1938 financial statements of the company.

These letters could not have prejudiced the defendant. Other evidence proved his guilt to the point of demonstration. In the main, the substance of the letters is abundantly shown by other competent evidence.

The only seriously asserted defense is that Beaudry made his "investment" or "loaned" money to the Merit Fur Company, not defendant personally, only after making a full investigation of the operations of the company and being shown properly prepared financial statements. Defendant's only witness was the accountant and office manager of the company. His testimony went mainly to the veracity of the financial statements, upon which defendant claims Beaudry solely relied. The matter in the letters charging falsity of those statements, mainly the receivables account, is completely reiterated, and with more detail, by the competent oral testimony of Beaudry and other witnesses for the state.

The residue of extraneous matter, Beaudry's stated impatience at the delay, his disdain for defendant, the threats which run the gamut of possible civil remedies, manifest the inevitable attitude of a man in Beaudry's then position, the only one which, if the rest of his story was believed, the jury could expect him to have. As evidence of guilt, this was largely irrelevant but certainly not prejudicial or of a nature that tended to excite passion in the minds of the jury.

Judgment affirmed.