69 N.J. Super. 410 (1961)
174 A.2d 491
FENTRON ARCHITECTURAL METALS CORPORATION, A CORPORATION OF NEW YORK, PLAINTIFF-RESPONDENT,
v.
SAMUEL ROMAGNINO, ANTHONY ROMAGNINO AND DOMINICK ROMAGNINO, CO-PARTNERS TRADING UNDER THE FIRM NAME OF ROMAGNINO CONSTRUCTION COMPANY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1961.
Decided October 16, 1961.
*411 Before Judges PRICE, SULLIVAN and LEONARD.
Mr. James A. Major argued the cause for appellants (Messrs. Major & Major, attorneys; Mr. James A. Major, II on the brief).
*412 Mr. Merritt Lane, Jr., argued the cause for respondent (Messrs. McCarter & English, attorneys; Mr. Michael D. Loprete, on the brief).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Plaintiff sued defendants for breach of contract and, after a jury trial, recovered a judgment for $10,000 and costs. Defendants appeal.
Defendants Samuel Romagnino, Anthony Romagnino and Dominick Romagnino are co-partners trading under the name of Romagnino Construction Company. They are general contractors with a place of business in Cliffside Park, N.J. Plaintiff, a New York corporation doing business in New York, New Jersey and other East Coast states, manufactures aluminum windows, aluminum doors and aluminum ornamental work.
This litigation is set against the following background. The Board of Education of the City of Englewood had called for competitive bids on its proposed junior high school and auditorium, the bids being due on September 29, 1959, at 8 P.M. Defendants were interested in securing the contract to build the school and had prepared a bid for submission. Plaintiff learned of the proposed school job and was interested in supplying the aluminum windows and aluminum doors called for by the plans and specifications. These specifications provided that the aluminum windows and aluminum doors to be used were to be equal and similar in quality to those manufactured by certain named concerns.
Plaintiff's claim, as spelled out by the testimony of its regional sales manager, Matt Sabatino, was that plaintiff, through Browns Letters, a trade publication, had learned that defendants and other contractors were planning to bid on the Englewood school job. On the afternoon of September 29 Sabatino telephoned the several contractors and submitted prices for supplying aluminum windows and doors. Sabatino explained that the reason for calling in just before *413 bidding time is to prevent the general contractors from playing one subcontractor's price against another.
At about 5:30 in the afternoon of the same day Sabatino telephoned defendants' office, talked with Anthony Romagnino, and quoted a price of $135,645 which Anthony Romagnino said was better than others he had received at the time. Sabatino then offered to set a better price if defendants would guarantee a contract for the work should defendants be the successful general contractor. Anthony Romagnino had his brother Samuel Romagnino speak to Sabatino on the telephone and Sabatino offered to set a preferential price of $123,000 for the aluminum windows and doors if defendant firm would guarantee plaintiff a contract at that price if defendant firm was the low bidder and eventually received the general contract. According to Sabatino, Samuel Romagnino agreed to those terms and said that he would immediately take advantage of this price and change his figures. Neither plaintiff nor Sabatino had had any previous dealings with defendants.
The next day, having ascertained that defendants were the low bidder, Sabatino wrote the following letter to defendants.

"Fentron Architectural Metals Corporation 62-35 30th Avenue, Woodside 77, New York
 September 30, 1959
 Romagnino Construction Co.
 289 George Road
 Cliffside Park 11, N.J.
 Att: Mr. Sam Romagnino
 Re: Englewood Jr. H.S.
 Englewood, N.J.
Dear Mr. Romagnino:
Congratulations on your being the low bidder on the above mentioned project.
We wish to assure you of our utmost cooperation as your subcontractor for the work as contained in sections 14 and 6 (with the exception of the ticket booth), for the agreed sum of $123,000.00 subject to the terms and conditions of your contract with the owner.
*414 At your earliest convenience we would appreciate receiving your formal contract as well as a set of plans and specifications so that we can schedule our work for detailing.
 Very truly yours,
 Fentron Architectural Metals Corp.
 Matt Sabatino /s/
 MATT SABATINO
 Regional Sales Manager
 MS:FR
 Enc."
No reply to the above letter was received, and on October 6 Sabatino telephoned defendants' office and talked to Samuel Romagnino. Romagnino denied that he had made an agreement with Sabatino but did not object to Sabatino's suggestion that they meet to discuss the matter.
On October 9 Sabatino visited defendants' office and for the first time met Samuel Romagnino and Anthony Romagnino. Sabatino showed a sample of plaintiff's window to Samuel Romagnino, who agreed that it was a fine quality product and then said that he might give the contract to plaintiff if plaintiff would reduce its price. Sabatino reminded Samuel Romagnino of the "verbal binding agreement" to which Romagnino replied that it was "your word against ours" and added "if you don't like it, go ahead and sue us." Sabatino then left, and that same day another letter was sent by plaintiff to defendants as follows:

"Fentron Architectural Metals Corporation 62-35 30th Avenue, Woodside 77, New York
 October 9, 1959
 Romagnino Construction Co.
 289 George Road
 Cliffside Park 11, N.J.
 Att: Mr. Sam Romagnino
 Re: Englewood Junior High School
 Englewood, N.J.
Dear Mr. Romagnino:
On September 29th, 1959 we tied in with you re the Englewood Junior High School, Englewood, New Jersey, for the work as contained *415 in Sections 14 and 6 (with the exception of the ticket booth), for the agreed sum of $125,000.00. [sic].
We confirmed this agreement with you by our letter of September 30th. Now that you have used our bid and have been the successful bidder we understand from our Mr. Matt Sabatino that at a visit which he had paid to your office on today's date you are refusing to recognize your agreement with us.
We made a firm, binding contract with you. We have been and still are fully prepared to perform this contract. If you persist in your refusal to live up to your agreement with us you will leave us no alternative but to turn this matter over to our attorney.
 Very truly yours,
 Fentron Architectural Metals Corp.
 STANLEY J. GORDON
 SJG:FR Vice-President,
 cc: Mr. Foreman Architectural Sales"
The present litigation was commenced on or about November 9, 1959.
At the trial plaintiff produced three witnesses who allegedly were present in Sabatino's office on September 29, 1959, and heard Sabatino's end of the telephone conversation with Samuel Romagnino. They were permitted over the objection of defendants' attorney to testify to what they heard Sabatino say to Samuel Romagnino over the telephone. Also, the trial court, again over the objection of defendants' attorney, allowed the letters of September 30, 1959 and October 9, 1959 to be marked in evidence.
At the conclusion of the plaintiff's case counsel for defendants moved for judgment on the ground that plaintiff had not proved that its windows and doors had been approved by the architect as being equal and similar in quality to those called for by the specifications, so that plaintiff had not shown an offer on its part which would be consonant with the requirements of the specifications. This motion was denied.
Defendants, on their part, denied that any agreement to guarantee plaintiff a contract had been made. Samuel Romagnino testified that prior to September 29, 1959 he had never heard of plaintiff nor had he ever talked to Matt *416 Sabatino until Sabatino spoke to him on the telephone at about 5:30 in the afternoon of that day. Romagnino's version of the telephone conversation was that Sabatino quoted a price of $137,000 or $135,000 for supplying the windows and doors and then offered to make a "deal" for a better price. Romagnino told him that they were not in the practice of making deals with anyone, but that if Sabatino was interested in bidding, to send in a bid in writing. Sabatino then mentioned a price of $123,000 which Romagnino wrote down. The next morning Sabatino telephoned Samuel Romagnino and, after congratulating the defendants on being the low bidder, asserted that Romagnino had "made a deal" with him. Romagnino told Sabatino at that time that no deal had been made. A few days later, somewhere between October 6 and 9, Sabatino called at defendants' office and for the first time met Samuel Romagnino. Sabatino again asserted that he had a deal and threatened suit if plaintiff did not get the contract for the aluminum windows and doors. Samuel Romagnino, in turn, denied that he had made any deal and the meeting ended on an acrimonious note. Neither of the Romagninos was questioned about the letter of September 30, 1959.
Suit was commenced shortly thereafter and, as has been noted, at the conclusion of the trial the jury rendered a verdict for plaintiff in the amount of $10,000, and a judgment was entered accordingly.
The foregoing recital does not detail all of the evidence presented in the case. It merely summarizes the proofs which are pertinent to a proper consideration of this appeal.
Defendants charge that the trial court erred in denying defendants' motion for judgment made at the conclusion of plaintiff's case. This motion was grounded on plaintiff's alleged failure to show that the architect had approved its windows and doors as equal and similar in quality to those called for by the specifications. This contention lacks merit. Even granted that at some point prior to installation plaintiff's windows and doors would have *417 had to be approved by the architect as meeting the specifications, the dispute between plaintiff and defendants did not involve architect approval of plaintiff's product at all. It was limited to plaintiff's assertion and defendants' denial that on September 29, 1959 an oral agreement had been entered into by the parties. Nowhere in the case was it claimed that the dispute involved the question whether plaintiff's product had been approved by the architect or met the terms of the specifications. Neither defendants' answer nor the pretrial order raised this as an issue, and it was immaterial to a proper consideration of the case.
Defendants next argue that it was prejudicial error for the court, over the objections of defendants' attorney, to admit in evidence the letters of September 30, 1959 and October 9, 1959, because the letters were self-serving documents without probative value.
We find this point to be well taken. These letters were not written in the course of a correspondence between the parties. The parties had never had any previous dealing with each other so that there was no custom or practice shown. They were unsolicited letters written after the alleged transaction between the parties had been consummated. The letter of October 9, 1959 was sent after an acrimonious meeting between Sabatino and the Romagninos at which the Romagninos reiterated their position that they had no contract with plaintiff and told him in effect to bring suit if he didn't like it. The letter of October 9 clearly was not competent or relevant proof as to the existence of the alleged agreement.
The letter of September 30, 1959 may have been written prior to any dispute between the parties, although Samuel Romagnino did testify that Sabatino called him on the morning of September 30 and claimed that he had a deal but was told that no deal had been made. Assuming, though, that the alleged conversation of September 30 did not take place (Sabatino denied that it had), the letter was unquestionably written after the alleged oral agreement between *418 the parties had been made. Plaintiff calls it a confirmatory letter, but obviously it was a unilateral confirmation. Plaintiff was the one who had solicited the business of supplying the aluminum windows and doors at a "preferential" price, and the claim was that defendants agreed to give plaintiff that business at the price quoted. Any "confirmation" of defendants' promise, to have probative value, would have had to come from defendants. It was purely self-serving for the plaintiff to confirm by letter that defendants had agreed to give it such business.
Plaintiff argues that even though the letters of September 30, 1959 and October 9, 1959 may be self-serving, defendants' failure to answer them is an admission of the correctness of the contents of such letters. This is not so. "An unanswered letter, not received in the course of a correspondence, is not evidence at all against the recipient, except to prove notice or demand." Hand v. Howell, 61 N.J.L. 142, 146 (Sup. Ct. 1897), affirmed 61 N.J.L. 694 (E. & A. 1898); see also Mattocks v. Lyman, 16 Vt. 113 (Sup. Ct. 1844); Fenno v. Weston, 31 Vt. 345 (Sup. Ct. 1858); Mahoney v. Kennedy, 188 Wis. 30, 205 N.W. 407 (Sup. Ct. 1925); Shambaugh v. Willard, 45 S.W.2d 1105 (Tex. Civ. App. 1932); Winn v. Cudahy Packing Co., 241 Ala. 581, 4 So.2d 135 (Sup. Ct. 1941).
"A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts. He no more can impose a duty to answer a charge than he can impose a duty to pay by sending goods. Therefore a failure to answer such adverse assertions in the absence of further circumstances making an answer requisite or natural has no effect as an admission." A.B. Leach & Co. v. Peirson, 275 U.S. 120, 128, 48 S.Ct. 57, 72 L.Ed. 194, 195 (1927).
There are two exceptions to the foregoing rule. Unanswered letters may be admissible if they relate to an existing contract between the parties or are part of the res gestae. 20 Am. Jur., Evidence, § 568, p. 482.
*419 The letters of September 30, 1959 and October 9, 1959 did not relate to any existing contract. The existence of the contract was the very thing the letters were offered to prove. Nor was the letter of September 30, 1959 part of the res gestae. It was written a day after the alleged agreement had been made, and after an intervening incident, the opening of the bids, had radically changed defendants' position as a bidder. Under the circumstances, the letter of September 30, 1959 lacked the spontaneity to qualify as res gestae utterance. Cf. Riley v. Weigand, 18 N.J. Super. 66 (App. Div. 1952).
Moreover, the letter of September 30, 1959 was not unanswered in the light of the testimony by plaintiff's own witness Sabatino that after writing the letter and receiving no reply thereto, he telephoned defendants' office on October 6, 1959 and talked with Samuel Romagnino, who denied making any agreement with Sabatino. True, the letter was not formally answered, but within a few days after writing it Sabatino was told that defendants disputed the truth of the contents thereof.
Plaintiff next argues that even though the admission into evidence of the two letters be error, such error was harmless since the letters were merely cumulative evidence of other proper and competent evidence of the oral agreement. We cannot agree. The circumstances surrounding the alleged making of the agreement were unusual. Without the letters, it was one witness's word against another and, in that posture, the jury might have concluded that the letters were documentary proof of where the truth lay.
Under the circumstances it was error to admit the letters into evidence and defendants were prejudiced thereby.
Since the case must be retried, we turn to the remaining issues argued by defendants.
Defendants contend that it was error for the trial court to permit testimony as to usage and custom in the trade in connection with plaintiff's claim that it had made *420 a firm contract with defendants prior to the submission of defendants' bid. We find this contention unsound.
Defendants also contend that the trial court erred in allowing the persons who allegedly were present in the room with Sabatino when he spoke to Samuel Romagnino over the telephone, on September 29, 1959, to testify to what they heard Sabatino say to Samuel Romagnino over the telephone. We find no error. That there was a telephone conversation between Sabatino and Samuel Romagnino on that date was undisputed and, the particular conversation having been identified, the witnesses were competent to testify to what they heard. 2 Wigmore on Evidence, p. 789, § 669; United States v. Bucur, 194 F.2d 297 (7 Cir. 1952).
The remaining points raised by defendants are encompassed by our consideration, supra, of defendants' motion for judgment made at the close of plaintiff's case.
The judgment is set aside and the matter remanded for a new trial. Costs to abide the outcome.