639 A.2d 347

A.S. GOLDSTEIN COMPANY, PLAINTIFF–APPELLANT, v. BLOOM-FIELD PLAZA ASSOCIATES, BLOOM REALTY CORP., AND ENTITY XYZ, A BUSINESS ASSOCIATION THE IDENTITY AND LEGAL FORM OF WHICH ARE UNKNOWN TO THE PLAINTIFF, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 8, 1994—Decided March 31, 1994.

Before Judges PRESSLER [1], DREIER and KLEINER.

---

[1] Judge Pressler did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding the matter.

*Daniel Louis Grossman* argued the cause for appellant (*Mr. Grossman*, on the brief).

*Alice Beirne* argued the cause for respondent (*Scarinci & Hollenbeck*, attorneys; *Alice Beirne*, on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Plaintiff, a real estate broker, appeals from a summary judgment dismissing its complaint for a real estate commission based upon plaintiff's negotiation of a proposed lease between defendants, the owners of a strip mall,[2] and Blockbuster Video. Plaintiff approached defendants with Blockbuster as a potential tenant and negotiated the terms of a proposed lease for an out-building to be constructed in defendants' strip mall. Defendants argue that plaintiff is not entitled to a commission as the proposed lease was never signed and because the plaintiff and the defendants did not execute a commission agreement. We reverse.

The terms of the proposed lease were incorporated into a letter of intent which was allegedly signed by Jack Forgash on behalf of the property owner on February 24, 1989, and later by the proposed tenant.[3] Jack Forgash denied that he signed the letter of intent, but for the purpose of the motion for summary judgment, we must assume the signature is genuine. The letter, prepared by plaintiff, reads as follows:

The following outline describes the leasing arrangement previously agreed to between the undersigned owner Bloom Realty and tenant New Jersey Blockbuster Limited for the proposed addition to the Bloomfield Plaza Shopping Center, 107–135 Bloomfield Avenue, Bloomfield, New Jersey.

---

[2] Bloomfield Plaza Associates is the limited partnership that owns the strip mall; Bloom Realty Corp. is the general partner of Bloomfield Plaza Associates.

[3] Blockbuster's acceptance is undated, but the letter of intent must have been signed about February 27, 1989, since it is referred to as pending in plaintiff's February 27, 1989 letter to defendant.

| Total Area: | 7,000 square feet |
|---|---|
| Lease Term: | 15 years + (1) five year renewal option |
| Rental Rate: | Years |
| | 1–5 $16.00 triple net per square foot |
| | 6–10 $20.00 triple net per square foot |
| | 11–15 $25.00 triple net per square foot |
| | Option based on 100% CPI Formulas Tenant shall have the right of first refusal to lease for an additional period of ten years. Terms to be negotiated. |
| Rental Concession: | Maximum 90 days for tenant to complete necessary interior construction. If business opens before expiration of this period, rent will commence. |
| Landlord Work: | Exterior of building to include two walls with full linear glass (as much as possible) with entrances. |
| | Interior to include "vanilla box" as follows |
| | –400 amp electrical service |
| | —adequate supply of HVAC installed with ducts and defusers |
| | —adequate 2 × 4 lighting |
| | —suspended ceiling |
| | —bathrooms to code |
| | —walls taped and spackled |
| | —floor carpet ready |

Please note all of the above is conditioned on the receipt of the necessary approvals from the township of Bloomfield for the construction of the out parcel.

Please indicate your agreement with the foregoing terms by signing both copies of the agreement.

The lease was for space in an out-building to be constructed on the mall premises, but which required a variance which the owner was then in the process of obtaining. The trial judge dismissed the complaint because the letter of intent contained no commencement date.

■ On this motion for summary judgment, plaintiff was entitled to all favorable inferences. *R.* 4:46–2; *Judson v. Peoples Bank and Trust Co. of Westfield,* 17 *N.J.* 67, 75, 110 *A.2d* 24 (1954). We agree with plaintiff's claim that such inferences should have included defendants' intent actually to construct the building within a reasonable period after its hard-fought variance had been secured, especially since it had a tenant for the space. A jury could also infer from the terms of the letter of intent that the tenant was to take possession of the building when it was constructed. The letter of intent explicitly recognized that there would be substantial interior construction by the tenant and the payment of rent was to commence ninety days after the tenant took possession, but earlier if the tenant opened for business within the ninety days. Therefore the parties to the letter of intent apparently foresaw that both would act with reasonable alacrity to complete the project.

■ Although defendants convinced the judge that the omission of the commencement date was fatal to the agreement, there is ample authority that the law will imply some terms if the writing indicates that a basic agreement has been entered into between the parties. *See, e.g., The Berg Agency v. Sleepworld–Willingboro, Inc.,* 136 *N.J.Super.* 369, 346 *A.2d* 419 (App.Div.1975); *Looman Realty Corp. v. The Broad St. Nat'l Bank of Trenton,* 74 *N.J.Super.* 71, 180 *A.2d* 524 (App.Div.), *certif. denied,* 37 *N.J.* 520, 181 *A.2d* 782 (1962). We apply the same standard in this case as we would if Blockbuster were seeking to enforce the agreement or defendants were seeking to hold Blockbuster to it, and the other side contended that all of the material terms were not spelled out in their letter of intent.

The fact that the building has not been constructed can easily be explained by defendants having entered into a lease with Palmer Video for another portion of the strip mall and having included in that lease a non-competitive use provision that precluded the leasing of the out-building to Blockbuster. We have been provided with a copy of the Palmer Video lease in a confidential

.appendix. Suffice it to say, there was an economic motive for defendants to rent the empty space to Palmer Video, especially when defendants did not have to incur any construction costs for a new building.

Defendants next contend that even if they had agreed to the terms with Blockbuster, without a signed commission agreement plaintiff cannot collect a real estate commission. Plaintiff counters with assertions that there was an oral agreement for commissions at the time defendant signed the letter of intent and just prior to Blockbuster's acceptance, and that (1) the oral agreement was confirmed by plaintiff's commission letter which was admissible since it had not been repudiated by defendants, and (2) that no written agreement is necessary to sustain plaintiff's claim.

The proposed commission agreement provided for a five percent commission on the aggregate lease value for years one through ten and a three and one-half percent commission on the aggregate lease value for years eleven through twenty, and set forth a schedule for the payment of the commission. The draft agreement further provided that "[c]ommissions on leasing and or sale shall be earned upon execution and delivery of an Agreement by and between Owner and Tenant." Although this language could be interpreted such that the commission would be due only if a lease was actually executed, the presence of a contingency clause will not prevent the broker's recovery if the transaction is defeated by the seller's willful conduct. *Blau v. Friedman*, 26 *N.J.* 397, 401, 140 *A.*2d 193 (1958); *cf., Ellsworth Dobbs, Inc. v. Johnson*, 50 *N.J.* 528, 551, 236 *A.*2d 843 (1967). The transmittal letter accompanying the two-page proposed commission agreement was addressed to one of defendants' principals and stated:

The enclosed commission agreement has been modified to reflect our discussions with Jack Forgash at Friday's ICSC meeting.

Please respond with any questions you may have. Otherwise, return to me one fully executed agreement.

The letter of intent Jack executed has been sent to Blockbuster for counter signature.

Plaintiff contends that the draft agreement was evidential as an adoptive admission. 2 *McCormick on Evidence* § 262 (4th Ed. 1992). *McCormick* states:

> [I]t is sometimes announced as a "general rule," subject to exceptions, that failure to answer a letter does not constitute an admission. The negative form of the rule seems undesirable in that it tends toward over-strict rulings excluding evidence of material value. The preferable view is that the failure to reply to a letter containing statements which it would be natural under all the circumstances for the addressee to deny if he or she believed them untrue is receivable as evidence of an admission by silence. Two factors particularly tend to show that a denial would be naturally forthcoming: first, where the letter was written as part of a mutual correspondence between the parties, and second, where the proof shows that the parties were engaged in some business, transaction, or relationship which would make it improbable that an untrue communication about the transaction or relationship would be ignored.
>
> [<i>Id.</i> at 179–180; footnotes omitted].

Courts have stated this rule in various language. *See Megarry Bros., Inc. v. United States,* 404 *F.*2d 479, 488 (8th Cir.1968), quoting from *McCormick on Evidence* § 247, pp. 531–532 (1954) (" * * * [F]ailure to reply to a letter, containing statements which it would be natural under all circumstances for the addressee to deny if he believed them untrue, is receivable as evidence of an admission by silence."); *See also Graybar Elect. Co., Inc. v. Sawyer,* 485 *A.*2d 1384, 1388 (Me.1985) (If a letter containing a charge was received and was " 'calculated to evoke a reply,' " if no reply was made, such a fact " 'unexplained, may afford an inference that the charge is true.' ") (quoting *Ross v. Reynolds,* 112 *Me.* 223, 91 *A.* 952, 953 (1914)). Additionally, as noted in *Crain v. Allison,* 443 *A.*2d 558, 565 (D.C.1982):

> [W]here the parties are engaged in a business or other relationship or transaction in a situation which would make it improbable for an untrue communication concerning the relationship or transaction to be ignored, the failure to reply to a letter which contains statements which the addressee would normally deny if untrue is receivable as evidence of an admission by silence.

In New Jersey case law, we have been less than wholehearted in our adoption of this rule as stated in *McCormick. See State v. MacFarland,* 83 *N.J.L.* 474, 484–486, 83 *A.* 993 (E. & A.1912); *Hand v. Howell,* 61 *N.J.L.* 142, 146, 38 *A.* 748 (Sup.Ct.1897); *see also Fentron Architectural Metals Corp. v. Romagnino,* 69

*N.J.Super.* 410, 418, 174 *A.*2d 491 (App.Div.1961), *certif. denied,* 36 *N.J.* 297, 177 *A.*2d 341 (1962), and cases cited therein. *Fentron* recognized the rule's application to correspondence relating to an existing contract or if "part of the *res gestae,*" but rejected its application to the facts of the case; otherwise such writings were deemed inadmissible, especially if silence was used to prove acceptance of a contract. *Ibid.* These authorities have not been reviewed for over thirty years.

New Jersey has more recently codified the general rule of adoptive admissions in former *Evid.R.* 63(8) and now in *N.J.R.E.* 803(b)(2). Under *N.J.R.E.* 803(b)(2) a statement is not excluded by the hearsay rule if offered against a party, where the statement is one "whose content the party has adopted by word or conduct or in whose truth the party has manifested belief." The Evidence Rules as a whole evince a more expansive approach to the admission of evidence, and our 1993 rules are intended to make evidence law more uniform and reasonable. Interpreting *N.J.R.E.* 803(b)(2) and its predecessor to mirror the McCormick approach does no real violence to the earlier case law. The concept of "existing contracts" and "*res gestae,*" from *Fentron,* are little different from the "mutual correspondence," "business," or "transaction" noted in McCormick and now generally accepted nationwide. The rule is one governing admissibility only, and the factfinder is free to accept or reject the proof.

The admission of a draft commission agreement is not foreign to the field of brokerage commissions. *N.J.S.A.* 25:1–9, discussed in more detail *infra,* permits a broker to confirm in writing the terms of an oral commission arrangement within five days after making the oral agreement, provided the notice is sent prior to the actual sale or exchange of the real estate. This proposed agreement, however, may be repudiated by the owner before the actual sale unless the broker has negotiated with a prospective customer and the sale is consummated. Of course, in this case the transaction was not consummated. But the concept of assent by silence to the terms of a real estate broker's commission letter agreement is, in appropriate circumstances, recognized by this statute.

In this case, however, the plaintiff is required to prove the existence of the oral agreement before defendants' silence concerning this proposed contract could be evidential.  *See Ross v. Stricker*, 275 *P*.2d 991, 994 (Okl.1954) (distinguishing a contract from a written memorandum of a previous oral contract).  The possibilities for the jury's misuse of the unsigned commission agreement, if offered as proof of an adoptive admission are evident.  If the jury accepts plaintiff's testimony concerning the oral agreement, the introduction of these terms in the draft contract to show defendants' adoption of the terms by silence would create only cumulative evidence.  If the jury believes that there had been an oral agreement with these same terms, defendants' silence upon receipt of the draft contract would add nothing.  On the other hand, if the jury did not believe that there was such an oral agreement, the draft contract would be inadmissible under *Fentron*, since defendants' silence cannot be used to create a contract.  The opportunity for confusion is evident.  *N.J.R.E.* 403 (former *Evid.R.* 4).  In these circumstances therefore, the admission of defendants' silence as an adoptive admission in the face of this agreement was properly rejected.

There is, however, another use of this proposed agreement. It could be offered as evidence of the terms of plaintiff's demand, if such terms are in issue.  *See Marcus & Co., Inc. v. KLG Baking Co., Inc.*, 122 *N.J.L.* 202, 205, 3 *A*.2d 627 (E. & A.1939) (letter confirming oral agreement admissible).  In such an instance, however, the contract would be admitted not to show defendants' silence as an admission, but rather to corroborate plaintiff's own position concerning the terms of commission requested by plaintiff.  With appropriate limiting instruction, the proposed commission agreement could thus be evidential.

Defendants claim further that since there was no signed commission agreement, the real estate broker statute of frauds, *N.J.S.A.* 25:1–9, bars consideration of the alleged oral agreement with plaintiff.  Plaintiff correctly replies, however, that a commis-

sion on a lease is not a "sale or exchange" of real estate, and is thus not governed by the statute of frauds. *Klie v. Hollstein,* 98 *N.J.L.* 473, 475, 120 *A.* 16 (E. & A.1923); *Burt v. Brownstone Realty Co.,* 95 *N.J.L.* 457, 460–461, 112 *A.* 883 (E. & A.1921). These cases have never been overruled, and have been cited with approval over the years. *See e.g., Kagan v. Berman,* 14 *N.J.* 467, 474, 102 *A.*2d 765 (1954). We also note that the Legislature, faced with the apparently settled state of the law for over seventy-three years, has not seen fit to amend the real estate commission statute of frauds to include leases. If this principle is to be reviewed, it must be by the Supreme Court or the Legislature.

We therefore determine that (1) the letter of intent could be found to constitute an agreement to lease by Blockbuster and defendants, (2) defendants' silence after receipt of plaintiff's proposed commission terms, following an alleged oral assent to the terms, is inadmissible as evidence of an adoptive admission, but the draft agreement may be admissible as evidence of terms of plaintiff's demand, and (3) the real estate broker statute of frauds, *N.J.S.A.* 25:1–9, is inapplicable to agreements for commissions on rentals. Sufficient evidence therefore existed to defeat defendants' summary judgment motion.

Reversed and remanded.