976 A.2d 1092 (2009)
409 N.J. Super. 268
Ismael CRUZ-DIAZ, an incapacitated person, by his conservators Isabel Cruz and Aristedes Cruz, Plaintiffs-Appellants,
v.
Peter J. HENDRICKS, George J. Hendricks and Hendricks & Hendricks, a Partnership, Defendants, and
Liberty Mutual Insurance Company, Defendant-Respondent.
Docket No. A-4608-07T2
Superior Court of New Jersey, Appellate Division.
Argued December 17, 2008.
Decided August 10, 2009.
*1093 Robert A. Vort, Hackensack, argued the cause for appellants (Mr. Vort, on the briefs).
Donna M. Hawley argued the cause for respondent (Sherman & Viscomi, attorneys; Ms. Hawley, on the brief).
Before Judges A.A. RODRÍGUEZ, WAUGH and NEWMAN.
The opinion of the court was delivered by
*1094 RODRÍGUEZ, A.A., P.J.A.D.
Plaintiff, Ismael Cruz-Diaz, appeals from a grant of summary judgment dismissing his PIP claim against defendant, Liberty Mutual Insurance Company (Liberty Mutual), because the judge found that plaintiff's claim was time barred, pursuant to the PIP statute of limitations. N.J.S.A. 39:6A-13.1. We affirm, rejecting plaintiff's argument that payment of transportation costs to an independent medical examination (IME), which were paid by Liberty Mutual, constitute a "benefit" that extends the time when the PIP statute of limitations begins to run.
These are the salient facts. On May 23, 2000, plaintiff was injured in a motor vehicle accident. The vehicle that plaintiff was driving was struck head-on by a vehicle driven by Raymond A. Kassas and owned by Maria F. Reis. According to the police report, Kassas went through a stop sign without stopping. Plaintiff was taken to the hospital immediately after the accident. X-rays were taken and plaintiff was then released.
After the accident, plaintiff contacted his physician, Allan D. Tiedrich, M.D., complaining of pain that he believed was related to the accident. Plaintiff underwent physical therapy which did not improve his condition. Dr. Tiedrich recommended that he see a neurosurgeon, Edward M. Von Der Schmidt, M.D. Dr. Von Der Schmidt treated plaintiff for approximately six months. During that time, new X-rays were taken that revealed a fracture that was not seen in the X-rays taken immediately after the accident. In December 2001, doctors performed surgery on plaintiff's neck in order to alleviate his pain. This surgery resulted in plaintiff becoming a quadriplegic and unable to speak. Plaintiff was hospitalized for an extensive period and was eventually moved to a rehabilitation center.
At the time of the accident, plaintiff was a named insured on a motor vehicle policy issued by Liberty Mutual, which provided PIP coverage in the amount of $250,000. Plaintiff applied for PIP benefits. Liberty Mutual paid all bills submitted, in accordance with N.J.S.A. 39:6A-4 prior to the December 3, 2001 surgery. However, Liberty Mutual took the position that the surgery was related to plaintiff's extensive medical history prior to the auto accident. Plaintiff concedes that, in the early 1990s, he sustained severe back injuries. As a result, the Social Security Administration classified him as totally disabled. However, plaintiff could still function in a limited capacity. He could walk, drive, carry small packages and babysit his grandchild.
Liberty Mutual requested an independent medical examination (IME) to determine if plaintiff's need for neck surgery was causally related to the accident. Tech Medical Transport took plaintiff to the examination. As required by N.J.S.A. 39:6A-13(d), Liberty Mutual paid Tech Medical Transport. The last such payment was September 5, 2003. It is undisputed that these payments did not reduce plaintiff's PIP coverage nor affect his deductible.
After examining plaintiff and reviewing his medical records, Donald Frank, M.D., the independent examiner, concluded that plaintiff's neck surgery was unrelated to his accident. According to Dr. Frank, the surgery was needed to address a congenital condition. Based on this determination, Liberty Mutual denied payment of bills related to the surgery.
Up to this point, plaintiff was represented by Peter J. Hendricks, George J. Hendricks, and Hendricks and Hendricks (collectively "Hendricks Law Firm"). In February 2004, plaintiff consulted Leonard J. Tarantino, Esq., an attorney with the firm where present counsel Robert A. *1095 Vort was a partner. Tarantino met with plaintiff to discuss his PIP claims. Vort instructed Tarantino to contact Liberty Mutual to inquire when the last PIP benefits had been paid to plaintiff.
Tarantino spoke with Pia Ohe, a Liberty Mutual claims examiner. She provided a list, including the date of each payment, and information about what each payment entailed. Tarantino sent Ohe a letter documenting this conversation. That letter confirmed that "[Liberty Mutual] last paid for medical bills on April 3, 2002, and that additional PIP benefits were paid on September 10, 2002, and on September 5, 2003, to transport [plaintiff] to medical examinations."
Because plaintiff had been rendered totally disabled as a result of the December 3, 2001 surgery, in October 2004, the court appointed plaintiff's wife and one of his sons as conservators for plaintiff. On September 6, 2005,[1] plaintiff's conservators sued Liberty Mutual for PIP benefits. Plaintiff also sued his former attorneys, Hendricks Law Firm, for legal malpractice.
Liberty Mutual answered and moved to dismiss the claim against it, arguing that the suit was time barred under N.J.S.A. 39:6A-13.1. Plaintiff opposed the motion on three grounds: 1) the September 5, 2003, payment to Tech Medical Transport was the final PIP "benefit" paid by Liberty Mutual: therefore, that was the date the statute of limitations began to run; 2) Liberty Mutual was estopped from using a statute of limitations defense because it was Liberty Mutual's representative who told plaintiff when the last "benefit" was paid; and 3) plaintiff's mental incapacitation should toll the statute of limitations.
Judge Jamie Happas granted Liberty Mutual's motion, concluding that because Liberty Mutual's September 5, 2003 payment to Tech Medical Transport did not reduce plaintiff's PIP coverage, it did not constitute a PIP benefit. Therefore, the judge agreed with Liberty Mutual that the last payment of PIP benefits was made on April 3, 2002. Thus, the PIP statute of limitations expired on April 3, 2004 pursuant to N.J.S.A. 39:6A-13.1, which requires that actions to recover PIP benefits be commenced within four years of the accident which gives rise to the claim, or within two years of the last payment of benefits. Moreover, the judge held that Liberty Mutual was not estopped from raising the statute of limitations defense because Ohe, the claims examiner, "made it very clear that she was referring to a transportation expense to an IME scheduled by Liberty Mutual." The judge also found that "[d]efendant did not lull plaintiff into delaying the commencement of the action," nor did it "lead plaintiff [...] into a false belief by requesting additional documents and then denying the claim." Lastly, the judge concluded that the PIP statute of limitations could not be tolled for incapacity.
Plaintiff appeals, raising the same arguments as in the Law Division. We are not persuaded by these arguments.

Payment of Transportation Expenses Is Not A "Benefit"
Plaintiff contends that the payment to Tech was a "benefit" within the meaning of the No Fault Act. We disagree.
N.J.S.A. 39:6A-13.1 requires that an action for PIP benefits:
[S]hall be commenced not later than two years after the injured person or survivor *1096 suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident, or not later than four years after the accident whichever is earlier, provided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than two years after the last payment of benefits. (emphasis added)
Thus, the clear and unambiguous language of the statute provides different dates for calculating the limitations period, depending on whether any PIP benefits have been paid. If the PIP carrier has made no payments, the insured must file within two years of the accident or after the date on which the claimant became aware of the injuries related to the accident, but not later than four years after the accident. Zupo v. CNA Ins. Co., 193 N.J.Super. 374, 379-80, 474 A.2d 259 (App.Div.1984), aff'd o.b., 98 N.J. 30, 483 A.2d 811 (1984). However, if the PIP carrier has paid benefits, the insured may bring an action for additional benefits within two years after the last payment, "irrespective of the length of time which may have elapsed between that date and the date of the accident." Id. at 380, 474 A.2d 259.
Here, it is undisputed that Liberty Mutual made several PIP payments to plaintiff. Therefore, the statute of limitations began to run on the date the last PIP benefit was paid. Liberty Mutual takes the position that the last payment of PIP benefits occurred on April 3, 2002, when it paid University of Medicine and Dentistry of New Jersey for treatment rendered to plaintiff. Plaintiff argues that the September 5, 2003 payment to Tech Transport was the last PIP benefit payment. We agree with Liberty Mutual, as did Judge Happas.
N.J.S.A. 39:6A-4 lists the benefits provided under "Personal injury protection coverage." These are: (a) "payment of medical expense benefits ... for reasonable, necessary, and appropriate treatment and provision of services to persons sustaining bodily injury;" (b) "income continuation benefits;" (c) "essential services benefits;" (d) "death benefits;" and (e) "funeral expense benefits." Clearly, the payment to Tech Transport does not come within those benefits listed in (b) to (e). Nor is it payment of a reasonable and necessary treatment.
Plaintiff urges us to look to other statutorily-defined terms for guidance, such as "medical expense" as defined by N.J.A.C. 11:3-4.2 or N.J.A.C. 11:3-4.3(a), to find the payment to Tech tolled the statute of limitations. We reject this argument for several reasons.
First, the language of the PIP statute of limitations is clear and unambiguous. There is no need to look to other authorities to construe the phrase "payment of benefits." When interpreting statutes and regulations, a court must "look to the language employed by the Legislature to understand the intended effect of [a] ... provision, assuming that the Legislature meant to ascribe to the statutory words their ordinary meaning and significance." Jablonowska v. Suther, 195 N.J. 91, 105, 948 A.2d 610 (2008) (internal quotation and citations omitted). If the statute's ordinary language evidences the Legislature's intent, then the court must apply that plain meaning. Ibid. Moreover, when a term of art is employed in the statutory language, that term is to be given its "technical sense." State v. Murzda, 116 N.J.L. 219, 224, 183 A. 305 (E. & A.1936).
Second, plaintiff was never responsible for the transportation cost and his PIP deductible was not charged. N.J.S.A. 39:6A-13(d) requires an insurer to bear the cost associated with an IME. As Liberty Mutual points out, plaintiff "could never *1097 under any circumstances have been obligated to pay Tech's bill." Therefore, the payment of that bill was not a "benefit" to plaintiff.
Third, plaintiff argues that, because his medical condition did not improve after months of extensive therapy, he was required, pursuant to N.J.A.C. 11:3-4.6, to obtain an "independent consultative opinion." Thus, plaintiff argues that the IME Liberty Mutual ordered for him was, in actuality, an independent consultative opinion. Because such opinions are part of statutorily-mandated "care paths," plaintiff asserts that the examination was a "medically necessary" "medical expense," and Liberty Mutual provided a "benefit" when it released payment for his transportation to that examination. We note that plaintiff fails to cite any authority to support the proposition that an "independent consultative opinion" and an IME are synonymous.
Although an IME is not defined by statute, plaintiff concedes that, "[t]he IME is intended to enable insurance companies to verify that the treatments sought by the claimant are necessary and reasonable...," or, as in this case, causally related to the accident. In other words, the purpose of such an examination is generally to determine the most financially-sound plan for future treatments. It is typically requested by the insurer or the insured's employer and, unlike a consultative exam, which is used to determine the effectiveness of "care paths" in hopes of improving the treatment, an IME is employed to determine when the insurance provider can refuse to pay for further treatment.
An independent consultative opinion, on the other hand, is defined as a "physical examination by a physician of similar specialty to the injured person's treating practitioner to provide a second medical opinion. The independent physician may support, refute, or provide alternatives to the current diagnosis and treatment plans." Cynthia Craig & Daniel Pomeroy, New Jersey Auto Insurance Law, § 11:3-4.10, Appendix at 607 (2009).
Here, we conclude that "IME" and "independent consultative opinion" are two unique terms of art. It cannot be assumed that the Legislature intended to use them interchangeably.
Plaintiff also argues that transportation to the IME was a "benefit" simply because plaintiff was taken to a medical exam that could have led to improved treatment. However, this assertion is at odds with our prior interpretations of the phrase "last payment of benefits" in the context of the PIP statute of limitations.
In Everett v. State Farm Indem. Co., 358 N.J.Super. 400, 818 A.2d 372 (App.Div. 2002), aff'd o.b., 175 N.J. 567, 818 A.2d 319 (2003), the insured sought PIP benefits from State Farm Indemnity Company (State Farm). State Farm withheld payment and the claimant sued. The issue was whether the statute of limitations had run on the plaintiff's claim. Id. at 404, 818 A.2d 372. State Farm's last "payment" on the claimant's behalf was a credit for $46.64 against the claimant's deductible. Ibid. Payment of this credit occurred within the period of limitations, and so the insured argued that the credit was the "last payment of benefits" pursuant to the statute. Ibid. State Farm argued that a benefit should be defined only as "an actual payment ... to either the insured or a medical provider," and not an increase in the amount of the deductible. Id. at 407, 818 A.2d 372. We held that the credit to the plaintiff's deductible was an "indirect monetary benefit because his deducible was reduced." Ibid.
Here, Liberty Mutual did not credit plaintiff's deductible. Instead, Liberty Mutual paid a cost it incurred, i.e., transportation to the IME. N.J.S.A. 39:6A-13(d). *1098 Liberty Mutual was required to pay for that exam; plaintiff could not have been billed. Similarly, we have held that "the limitations period is triggered by an insurer either: 1) paying benefits under the policy to the insured or to a third-party medical provider on behalf of the insured; or 2) crediting the value of the benefit against the insured's deductible." Bryant v. Ohio Cas. Ins. Co., 378 N.J.Super. 603, 607, 876 A.2d 844 (App.Div.2005).
Here, plaintiff did not personally receive any benefit, because Liberty Mutual did not reduce his deductible or make the payment "on behalf of the insured."

Estoppel Theory
Plaintiff also argues that, "the court should estop [Liberty Mutual] from arguing that the payment to Tech Medical Support was not the date from which Cruz' time to sue began to accrue." We disagree.
Plaintiff relies on Price v. N.J. Mfrs. Ins. Co., 182 N.J. 519, 867 A.2d 1181 (2005). In Price, a pedestrian was injured when a motor vehicle struck him. Id. at 521, 867 A.2d 1181. The plaintiff informed the driver's insurance company, New Jersey Manufacturer's Insurance Co. (NJM), of his intention to file an uninsured motorist claim. Id. at 522, 867 A.2d 1181. In response, NJM requested and received various documents from the plaintiff. These requests for documents began in March of 1998 and lasted until August 21, 2001. Id. at 522-23, 867 A.2d 1181. In total, NJM made at least five separate requests for documents, the last of which occurred nine days before the statute of limitations was set to expire. Ibid. When Price finally filed his complaint, NJM argued that it was time barred. Id. at 523, 867 A.2d 1181. Price responded that NJM should be estopped from relying on the statute on limitations because it had "lulled" him into believing that he had made a timely claim. Ibid.
Finding NJM had continually requested more information from the plaintiff regarding his claim for benefits and waited until the statute of limitations had safely run to deny his claim, the Supreme Court held that the undisputed facts supported "an equitable tolling of the statute of limitations." Id. at 525, 867 A.2d 1181. The Court noted that "NJM was required to act in a fair manner and inform plaintiff if there were any deficiencies in his claim or if he needed to file a request for arbitration by a certain date." Id. at 526, 867 A.2d 1181. Therefore, the insurer has a duty to deny coverage within the statute of limitations period so that an insured may file suit if he disagrees with the insurer's decision. Id. at 527, 867 A.2d 1181.
Here, as the judge found, the facts are distinguishable. The judge explained that:
In Price, the insurance carrier requested documents over a period of more than three years and then refused coverage after the statute of limitations had run. Moreover, the last request came only nine days before the limitations allows [sic].
Here, Tarantino and Liberty Mutual had one conversation where Tarantino requested information from Liberty Mutual. The plaintiff held this conversation approximately two years after Liberty Mutual decided to deny plaintiff's claim based on the July 17th, 2002 IME of Dr. Frank.
In short, the judge found that Liberty Mutual "did not lead plaintiff on or lull the plaintiff into a false belief by requiring additional documents and then denying the claim." We agree with the judge's findings that the Price holding does not support plaintiff's arguments.
We are guided by the well-established principle that the claimant bears the burden of filing within the statute of limitations. *1099 Craig & Pomeroy, supra, New Jersey Auto Insurance Law § 11:2-2 at 215. Therefore, the onus is on the plaintiff to "request a copy of the PIP ledger or ask the carrier to state in writing the date of last payment." Ibid. When such information cannot be obtained, the plaintiff should file within two years of his accident to preserve his claim. Ibid. It is not the insurer's burden to ensure that the claimant knows exactly when his time for filing will expire. Although the insurer may not "lull" the insured into believing that he has time to file, its only duty is to act in good faith. Price, supra, 182 N.J. at 526, 867 A.2d 1181.
Plaintiff also argues that Liberty Mutual's records of payment are statements against interest pursuant to N.J.R.E. 803(c)(25). Plaintiff makes this assertion based on Liberty Mutual's "commingling of the transportation bill with other payments for PIP benefits." However, the judge addressed this argument by noting that Liberty Mutual's filing system consists of a series of codes. Each code has a different meaning so that a claims examiner will know which payments affect PIP coverage. Liberty Mutual assigned the payment at issue the appropriate code for an IME expense. Therefore, the judge found that Liberty Mutual did not classify the September 5, 2003, payment as a benefit merely because it was recorded in the same file as all the benefits paid. We conclude that Liberty Mutual made no declaration against interest, so as to make the transportation payment a "benefit."
Plaintiff also argues that Liberty Mutual's "failure to respond to the letter [Tarantino sent to Ohe confirming their conversation] is an admission by silence." In support of this proposition, plaintiff cites A.S. Goldstein Co. v. Bloomfield Plaza Assoc., 272 N.J.Super. 59, 639 A.2d 347 (App.Div.), certif. denied, 137 N.J. 309, 645 A.2d 138 (1994). That case dealt with a broker who sued a tenant in a strip mall for his broker's commission. We held "the failure to reply to a letter containing statements which it would be natural under all the circumstances for the addressee to deny if he or she believed them untrue is receivable as evidence of an admission by silence." Id. at 65, 639 A.2d 347 (quoting 2 McCormick on Evidence § 262 (4th Ed.1992)). However, we went on to cite Fentron Architectural Metals Corp. v. Romagnino, 69 N.J.Super. 410, 418, 174 A.2d 491 (App.Div.1961), certif. denied, 36 N.J. 297, 177 A.2d 341 (1962), which held that "[a]n unanswered letter, not received in the course of a correspondence, is not evidence at all against the recipient, except to prove notice or demand." We stated that "[a] man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. [... ] Therefore a failure to answer such adverse assertions in the absence of further circumstances making an answer requisite or natural has no effect as an admission." Ibid. (quoting A.B. Leach & Co. v. Peirson, 275 U.S. 120, 128, 48 S.Ct. 57-58, 72 L.Ed. 194, 195 (1927)). Fentron held that there were two exceptions to this rule: "[u]nanswered letters may be admissible if they relate to an existing contract between the parties or are part of the res gestae." Ibid.
Here again, plaintiff attempts to apply a hearsay exception where no hearsay issue exists. The issue is not whether Tarantino's letter can be admitted into evidence despite it being hearsay. Rather, the issue is whether Liberty Mutual paid a "benefit" on September 5, 2003.

Tolling of Statute of Limitations
Plaintiff contends that the statute of limitations contained in N.J.S.A. 39:6A-13.1 was tolled because plaintiff was "insane" within the meaning of N.J.S.A. 2A:14-21. *1100 Specifically, plaintiff argues that: (a) plaintiff has been and remains "insane" within the meaning of this statute; and (b) "the tolling provisions of N.J.S.A. 2A:14-21 also apply to actions for PIP benefits." We reject this argument because the PIP statute of limitations, N.J.S.A. 39:6A-13.1(a), is not included in those claims which can be tolled pursuant to N.J.S.A. 2A:14-21. N.J.S.A. 2A:14-21 provides, in pertinent part:
[i]f any person entitled to any of the actions or proceedings specified in N.J.S.A. 2A:14-1 to 2A:14-8 or N.J.S.A. 2A:14-16 to 2A:14-20 or to a right or title of entry under N.J.S.A. 2A:14-6 is or shall be, at the time of any such cause of action or right or title accruing, under the age of 21 years, or insane, such person may commence such action or make such entry, within such time as limited by those statutes, after his coming to or being of full age or of sane mind.
In McLaughlin v. Metzner, 201 N.J.Super. 51, 54, 492 A.2d 696 (App.Div. 1985), we explicitly held that the tolling language of N.J.S.A. 2A:14-21 only applies to the specified actions mentioned. The PIP statute is not mentioned in N.J.S.A. 2A:14-21. Moreover, the specific PIP statute must be read to override the more general tort law provisions when the two conflict. Metzner, supra, 201 N.J.Super. at 54, 492 A.2d 696. There is no tolling provision in the PIP statute.
The Metzner court also held that "[t]he tolling provision in the general statutes of limitations does not apply to statutory causes of action which fix their own limitation provisions." Ibid. Pursuant to this authority, the statutory time period for bringing PIP suits is not tolled for infancy or incapacity/incompetence, as it would be in general tort law. Ibid. See also, Giantonio v. Reliance Ins. Cos., 175 N.J.Super. 309, 315, 418 A.2d 303 (Law Div.1980) (holding that the PIP statute does not provide for a tolling of the time limit for infants and N.J.S.A. 2A:14:21's tort tolling does not apply to PIP cases).
Affirmed.
NOTES
[1] Because the courts were closed on September 5, 2003 for Labor Day, the complaint was filed on the next court business day. N.J.S.A. 36:1-1; Poetz v. Mix, 7 N.J. 436, 445-46, 81 A.2d 741 (1951).