38 A.3d 559

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
DERRICK HARRIS, SR., DEFENDANT–APPELLANT.

Argued October 25, 2011—Decided February 27, 2012.

Long, J., dissented and filed opinion, in which Rabner, C.J., and Albin, J., joined.

*Frank J. Pugliese,* Assistant Deputy Public Defender, argued the cause for appellant (*Joseph E. Krakora,* Public Defender,

attorney; *Mr. Pugliese* and *Michele C. Buckley,* Designated Counsel, on the briefs).

*Monica do Outeiro,* Assistant Prosecutor, argued the cause for respondent (*Peter E. Warshaw, Jr.,* Monmouth County Prosecutor, attorney; *Ms. do Outeiro* and *Mary R. Juliano,* Special Deputy Attorney General on the briefs).

*Ashlea D. Thomas,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Paula T. Dow,* Attorney General, attorney).

Judge WEFING (temporarily assigned) delivered the opinion of the Court.

Defendant was indicted for second-degree robbery, *N.J.S.A.* 2C:15–1, and second-degree burglary, *N.J.S.A.* 2C:18–2. Defendant's first trial, at which he did not testify, resulted in a hung jury. At defendant's second trial, at which he again did not testify, defendant was convicted of second-degree robbery and third-degree burglary. The trial court sentenced defendant to six years in prison for the robbery conviction, subject to the provisions of *N.J.S.A.* 2C:43–7.2, the No Early Release Act, and a concurrent four years in prison for the burglary conviction. Defendant appealed his convictions and sentence, and the Appellate Division affirmed in an unpublished opinion.

We granted defendant's petition for certification, *State v. Harris,* 205 *N.J.* 519, 16 *A.*3d 384 (2011), to consider whether the trial court abused its discretion when it ruled that defendant's prior convictions were not too remote and were thus admissible for purposes of impeachment in light of the fact that defendant had incurred convictions for disorderly persons offenses in the period between the prior criminal convictions and the instant offense. We granted permission to the Attorney General to appear as amicus curiae. We now hold that there was no abuse of discretion on the part of the trial court and thus affirm defendant's convictions.

## I.

In August 2006, Cynthia Davies and her husband Glen Davies [1] lived with their son and daughter in Neptune, New Jersey. On the evening of August 9, their son's girlfriend was visiting. Shortly before midnight, Glen, accompanied by his son, drove his son's girlfriend to the train station. Glen did not lock the exterior door when they left the house. Cynthia remained at home, where their daughter was already asleep. Cynthia went to bed and fell asleep; in accordance with the family's regular practice, she left on several lamps with low-wattage bulbs.

Cynthia was awakened by an intruder, who had one hand over her mouth and the other over her throat. He asked where her money was, and she responded that it was in her purse, which was in the kitchen. When the man headed toward the kitchen, Cynthia grabbed the cordless telephone and locked herself in the bedroom. She called 9-1-1 and watched through the glass panes of the bedroom door as the man rifled through her purse. He returned to the bedroom and jiggled the door as he tried to re-enter the room. When he could not, he left the house. The police responded, and Cynthia provided a description of the intruder to them.

Based upon that description, the police put together a photo array, but Cynthia was unable to identify the perpetrator. A few days later, the police assembled another array. According to the detective who displayed these photos to her, she looked at defendant's photograph for approximately one second before announcing, "That's him." Cynthia repeated her identification at trial.

Prior to defendant's first trial, the trial court conducted a hearing pursuant to *State v. Sands*, 76 *N.J.* 127, 386 *A.*2d 378 (1978), to determine whether defendant's prior convictions would be admissible to impeach his credibility in the event that he testified. According to the record created at that hearing, defendant had two prior criminal convictions. Defendant was previous-

---

[1] Because Cynthia and Glen have the same last name, we refer to them by their first names.

ly convicted on May 6, 1994, of two counts of third-degree posses-
sion of a controlled dangerous substance, *N.J.S.A.* 2C:35–10(a)(1),
under two separate indictments. For each conviction, he was
sentenced to a three-year term of probation. When defendant
subsequently violated the terms of his probation, he was re-
sentenced on February 3, 1995, to two concurrent four-year terms
of imprisonment.

Defendant was tried for the instant offenses approximately
thirteen years after he was sentenced to the concurrent four-year
custodial terms. During the instant litigation, defendant argued
at the *Sands* hearing that the two prior convictions were so
remote in time that they should not be admissible. In response,
the prosecution pointed to the fact that defendant had accumulat-
ed a significant number of convictions for disorderly persons
offenses in the intervening years. Among those noted at the
*Sands* hearing were four convictions for shoplifting, *N.J.S.A.*
2C:20–11(b)(1), entered on the following dates: July 25, 1994;
August 6, 1996; April 28, 2005; and October 12, 2007. Also noted
at the *Sands* hearing were convictions for possession of burglar
tools, *N.J.S.A.* 2C:5–5, entered on August 6, 1996; for defiant
trespass, *N.J.S.A.* 2C:18–3(b), entered on December 2, 2004; and
for possession of drug paraphernalia, *N.J.S.A.* 2C:36–2, entered on
April 28, 2005.[2]

The trial court was persuaded that while the disorderly persons
convictions were not themselves admissible, they could serve to
"bridge the gap" between defendant's two earlier criminal convic-
tions and his trial in the instant matter. They were pertinent, the
trial court concluded, to the remoteness element that is an essen-
tial part of any analysis under *Sands*. Accordingly, the trial court
held that the prior convictions could be used· for impeachment
purposes should defendant decide to testify at trial.

---

[2] The record before us discloses that defendant had several additional disor-
derly persons convictions. We have not listed them because they were not
considered by the trial court and are not material to our analysis.

The trial court determined, however, that the two prior convictions had to be sanitized in the event defendant elected to testify at trial. The prosecution was restricted to referring only to the indictment numbers, the degree of the crimes, the date defendant was sentenced, and the sentence he received—two concurrent four-year terms in prison. The prosecution was precluded from making any mention of the nature of the offenses or that defendant had been charged with violating the terms of his probation. As we noted, defendant's first trial resulted in a mistrial. The trial court adhered to those rulings for defendant's second trial, which resulted in his convictions.

## II.

### A.

Defendant presents several arguments in support of his position that the trial court erred when it ruled that defendant's more-than-ten-year-old convictions would be admissible if he testified. He asserts that not only were the convictions remote in time, the possessory drug offenses were not serious in nature and did not involve dishonesty. Those factors, he urges, weigh against their admissibility and make the trial court's reliance on the intervening disorderly persons convictions even more inappropriate.

Further, he argues that he is, at the very least, entitled to a new *Sands* hearing because the trial court did not address his argument that the two convictions should be excluded under *N.J.R.E.* 403, under which relevant evidence "may be excluded if its probative value is substantially outweighed by the risk of ... undue prejudice."

In addition, defendant urges that we overrule *Sands* at least in certain respects. He argues that its capacity to deter defendants such as himself from testifying does not serve the truth-seeking purpose of a trial. Defendant contends that New Jersey should follow the approach adopted in the *Federal Rules of Evidence* under which older convictions are excluded and the burden to

establish admissibility rests on the proponent who wishes to utilize them.

## B.

The State, in contrast, stresses the standard governing our review of a trial court's evidentiary rulings under which we determine whether the trial court abused its discretion. It cites to us a number of cases in which convictions older than those of defendant were deemed admissible at trial for purposes of impeachment.

## C.

Amicus Attorney General argues that the trial court's discretionary determination was correct and should be upheld. According to amicus, a series of disorderly persons convictions, such as those incurred by defendant, is relevant to the question of whether an individual has been willing to abide by society's laws. Thus, amicus contends that intervening disorderly persons offenses bear upon the question of whether that individual's convictions, otherwise admissible, should be excluded as too remote.

Amicus requests that we clarify that the trial court's analysis of whether a defendant's prior convictions should be admissible at trial should start not from the date of those prior convictions, but from the date the individual was released from incarceration. It points out that the offenses in this matter were committed approximately nine years after defendant was released from incarceration. Amicus contends that it would be misleading to the jury if defendant were permitted to present himself to the panel as if he had led an entirely law-abiding life.

Finally, amicus urges us to reject defendant's invitation to overrule *Sands* and adopt in its stead the federal approach to this evidential question. Amicus notes that we have rejected similar suggestions in the past, as well as the necessity for any change to our *Rules of Evidence* to be adopted in conformity with the

Evidence Act of 1960, *N.J.S.A.* 2A:84A–33 to –44. *See State v. Byrd,* 198 *N.J.* 319, 342–50, 967 *A.*2d 285 (2009).

## III.

We note at the outset certain fundamental principles that provide the framework for our analysis of the question presented. "Our Evidence Rules generally promote admissibility of all relevant evidence, *N.J.R.E.* 402, and 'evince a more expansive approach to the admission of evidence.'" *State v. Muhammad,* 359 *N.J.Super.* 361, 388, 820 *A.*2d 70 (App.Div.2003) (quoting *A.S. Goldstein Co. v. Bloomfield Plaza,* 272 *N.J.Super.* 59, 66, 639 *A.*2d 347 (App.Div.), *certif. denied,* 137 *N.J.* 309, 645 *A.*2d 138 (1994)). Further, "[t]rial judges are entrusted with broad discretion in making evidence rulings." *Ibid.*

"[A] trial court's evidentiary rulings are 'entitled to deference absent a showing of an abuse of discretion, *i.e.,* there has been a clear error of judgment.'" *State v. Brown,* 170 *N.J.* 138, 147, 784 *A.*2d 1244 (2001) (quoting *State v. Marrero,* 148 *N.J.* 469, 484, 691 *A.*2d 293 (1997)). We recently noted that "[t]rial court evidentiary determinations are subject to limited appellate scrutiny, as they are reviewed under the abuse of discretion standard." *State v. Buda,* 195 *N.J.* 278, 294, 949 *A.*2d 761 (2008) (citing *Hisenaj v. Kuehner,* 194 *N.J.* 6, 12, 942 *A.*2d 769 (2008); *Brenman v. Demello,* 191 *N.J.* 18, 31, 921 *A.*2d 1110 (2007)).

Our consideration of the question of whether the trial court abused its discretion in holding defendant's prior criminal convictions admissible is informed by a review of the historical progression of this law of evidence in New Jersey. That history was reviewed by Justices Francis and Jacobs in *State v. Hawthorne,* 49 *N.J.* 130, 133–35, 228 *A.*2d 682 (1967); *id.* at 149–50, 228 *A.*2d 682 (Jacobs, J., concurring). Originally, New Jersey law prohibited certain convicted criminals from testifying as a witness unless he or she was granted a pardon. *Id.* at 133, 228 *A.*2d 682 (majority opinion). That absolute prohibition was revised in 1874 to allow defendants to testify in their own defense. *Id.* at 134, 228 *A.*2d

682. As a caveat to this new privilege, the statute also provided that the witness's prior criminal convictions were admissible to test his or her credibility. *Ibid.* The law, which later became *N.J.S.A.* 2A:81–12 and laid the framework for *N.J.R.E.* 609, placed no limitations on the admissibility of the prior criminal convictions. *See ibid.*

In *Hawthorne,* the Court addressed whether the courts had discretion to exclude evidence of a defendant's prior criminal convictions. *Id.* at 134–35, 228 *A.*2d 682. The defendant in *Hawthorne* was charged with an offense then-titled atrocious assault and battery. *Id.* at 133, 228 *A.*2d 682. Prior to trial, the defendant sought to exclude evidence that he had three prior criminal convictions, two of which were twenty years old. *Ibid.* The trial court granted the defendant's motion and interpreted the then-governing statute, *N.J.S.A.* 2A:81–12, as vesting a trial court with the discretion to exclude a prior conviction to avoid undue prejudice. *Id.* at 134–35, 141, 228 *A.*2d 682. This Court reversed. Justice Francis summarized the Court's holding:

> we hold the view that previous conviction of crime of a witness, whatever its age, may be shown to affect credibility. That we deem to be the legislative will, and if we overstate it, we assume the matter will be given appropriate consideration by the Legislature.
> [*Id.* at 140–41, 228 *A.*2d 682.]

The Legislature saw no need to respond to the Court's holding, and the statute remained unchanged. In 1967, New Jersey adopted evidence rules that were based in large measure on the *Uniform Rules of Evidence.* New Jersey did not, however, as part of that codification of our evidence law, adopt *Uniform Rules of Evidence R.* 21 (1953) on the use of conviction of a crime to impeach the credibility of a witness. Rather, it left the language of *N.J.S.A.* 2A:81–12 intact as the controlling standard.

In 1978 the Court elected, in *Sands,* to revisit the rule it had laid down in *Hawthorne,* which stated that the prior conviction of a witness could be admitted to impeach the credibility of that witness, no matter how remote. In *Sands, supra,* the Court concluded that the historical background upon which the *Haw-*

*thorne* Court rested its analysis was incomplete. 76 *N.J.* at 135, 386 *A.*2d 378. It set forth a more detailed historical progression of the law's evolution in this area, *id.* at 133–37, 386 *A.*2d 378, noted certain underlying policy factors, *id.* at 138–44, 386 *A.*2d 378, and ultimately determined

> that whether a prior conviction may be admitted into evidence against a criminal defendant rests within the sound discretion of the trial judge. His discretion is a broad one . . . . Ordinarily evidence of prior convictions should be admitted and the burden of proof to justify exclusion rests on the defendant.
> [*Id.* at 144, 386 *A.*2d 378.]

The Court proceeded to summarize the factors a trial court must weigh when it considers whether a witness may fairly be confronted with a prior criminal conviction to impeach credibility.

> The key to exclusion is remoteness. Remoteness cannot ordinarily be determined by the passage of time alone. The nature of the convictions will probably be a significant factor. Serious crimes, including those involving lack of veracity, dishonesty or fraud, should be considered as having a weightier effect than, for example, a conviction of death by reckless driving. In other words, a lapse of the same time period might justify exclusion of evidence of one conviction, and not another. The trial court must balance the lapse of time and the nature of the crime to determine whether the relevance with respect to credibility outweighs the prejudicial effect to the defendant. Moreover, it is appropriate for the trial court in exercising its discretion to consider intervening convictions between the past conviction and the crime for which the defendant is being tried. When a defendant has an extensive prior criminal record, indicating that he has contempt for the bounds of behavior placed on all citizens, his burden should be a heavy one in attempting to exclude all such evidence. A jury has the right to weigh whether one who repeatedly refuses to comply with society's rules is more likely to ignore the oath requiring veracity on the witness stand than a law abiding citizen. If a person has been convicted of a series of crimes through the years, then conviction of the earliest crime, although committed many years before, as well as intervening convictions, should be admissible.
> [*Id.* at 144–45, 386 *A.*2d 378.]

In *State v. Brunson,* 132 *N.J.* 377, 625 *A.*2d 1085 (1993), the Court attempted to alleviate the prejudice a defendant charged with a criminal offense would experience if that defendant had a prior conviction for a similar offense. *Id.* at 380, 625 *A.*2d 1085. It recognized the difficulties a jury might experience in following an instruction that it may consider that conviction only in terms of the defendant's credibility and not as substantive evidence of guilt. *Id.* at 390–91, 625 *A.*2d 1085. It also recognized the inappropriateness of permitting a defendant to present himself to the jury as having an unblemished past. *Id.* at 391, 625 *A.*2d 1085. It thus

directed that in such a situation, the prosecution could "introduce evidence of the defendant's prior conviction limited to the degree of the crime and the date of the offense but excluding any evidence of the specific crime of which defendant was convicted." *Ibid.* The defendant remained free, for strategic reasons, to present evidence with respect to the substance of the prior convictions. *Id.* at 392, 625 *A.*2d 1085.

The final development of this evolutionary process was the 1993 revision of our evidence rules. The revised rules adopted the numbering used in the *Federal Rules of Evidence* and followed those rules in many instances. One exception is *N.J.R.E.* 609, which, as we set forth later in this opinion, departs significantly from its federal analog. *N.J.R.E.* 609 succinctly states the general principle governing the question of whether the prior conviction of a witness should be admitted at trial.

> For the purpose of affecting the credibility of any witness, the witness' conviction of a crime shall be admitted unless excluded by the judge as remote or for other causes. Such convictions may be proved by examination, production of the record thereof, or by other competent evidence.
>
> [*N.J.R.E.* 609.]

Under *N.J.R.E.* 609, New Jersey permits the admission of "a witness's prior convictions ... for impeachment purposes despite the obvious prejudice that flows from such evidence, particularly for a criminal defendant." *State v. Hamilton,* 193 *N.J.* 255, 256, 937 *A.*2d 965 (2008). We have recognized that the decision of whether a prior conviction may be admitted to impeach a witness " 'rests within the sound discretion of the trial judge' ... [and that] '[o]rdinarily evidence of prior convictions should be admitted and the burden of proof to justify exclusion rests on the defendant.' " *State v. Whitehead,* 104 *N.J.* 353, 358, 517 *A.*2d 373 (1986) (quoting *Sands, supra,* 76 *N.J.* at 144, 386 *A.*2d 378). This Court has not had the occasion to directly consider the question squarely posed in this appeal: whether prior convictions of a witness that are themselves inadmissible because they represent convictions for offenses rather than crimes may be utilized to deem as proximate and admissible convictions for crimes that

might otherwise be ruled remote and inadmissible. We do not consider the statement in *Sands, supra,* that "[i]f a person has been convicted of a series of crimes through the years, then conviction of the earliest crime, although committed many years before, as well as intervening convictions, should be admissible" to answer the question because the Court there was not dealing with intervening convictions for disorderly persons offenses. 76 *N.J.* at 195, 386 *A.*2d 816.

Two decisions of the Appellate Division, however, should be noted. The first case is *State v. McBride,* 213 *N.J.Super.* 255, 517 *A.*2d 152 (App.Div.1986). In that case, the defendant faced charges of second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1), and terroristic threats, *N.J.S.A.* 2C:12–3, for which he was convicted, as well as charges of attempted murder and unlawful possession of a weapon for which he was acquitted. *Id.* at 260, 517 *A.*2d 152. The crimes for which the defendant was convicted occurred in 1982 and 1983 respectively. *Ibid.* The defendant had three prior convictions—a 1964 conviction for atrocious assault and battery, a 1971 conviction for negligent manslaughter, and a 1978 conviction in municipal court for possession of marijuana. *Id.* at 260–61, 517 *A.*2d 152. The defendant did not testify after the trial court ruled that his convictions would be admissible to impeach his credibility. *Id.* at 267, 517 *A.*2d 152. The Appellate Division affirmed, noting that "[a]lthough the last conviction for an indictable offense was 14 years prior to trial, the marijuana conviction was but six years prior to trial." [3] *Ibid.*

In *State v. Irrizary,* 328 *N.J.Super.* 198, 745 *A.*2d 550 (App. Div.), *certif. denied,* 164 *N.J.* 562, 753 *A.*2d 1154 (2000), the defendant was convicted of possession of cocaine and distribution of cocaine, based upon an incident that occurred in January 1987.

---

[3] Although it is not entirely clear from the opinion, we infer that both the trial court and the Appellate Division utilized the six-year-old marijuana conviction as a bridge. Certainly, the defendant did not argue on appeal that the marijuana conviction was inadmissible because it did not represent a conviction for a crime.

*Id.* at 201, 745 *A.*2d 550. At sentencing, the State sought a mandatory extended term under *N.J.S.A.* 2C:43–6(f) because the defendant had been convicted in 1985 of possession of a controlled dangerous substance with intent to distribute. *Ibid.* The defendant argued that the court should not impose an extended-term sentence, in part because of the remoteness of that earlier conviction. *See ibid.* He noted that the Attorney General's guidelines governing the prosecutorial decision of whether to seek an extended-term sentence stated that it would be appropriate not to seek an extended term under the statute if the prior record of the defendant " 'includes only convictions that are *extremely remote.*' " *Id.* at 203, 745 *A.*2d 550 (quoting *State v. Kirk,* 145 *N.J.* 159, 169, 678 *A.*2d 233 (1996)). The Appellate Division rejected the defendant's argument that his 1985 conviction was not a basis to subject him to a mandatory extended term. *Ibid.* It noted that he had a 1994 municipal court conviction for the disorderly persons offense of failure to deliver a controlled dangerous substance to a law enforcement officer. *Ibid.* The panel held that "in determining whether a predicate offense is too remote for purposes of waiver, the sentencing judge must consider intervening convictions, including disorderly persons convictions." *Ibid.*

■ As we noted earlier, *N.J.R.E.* 609 differs substantively from *Federal Rule of Evidence* 609. The latter addresses directly the question of a conviction that is more than ten years old. It places limitations on the use of such convictions and provides in subsection (b) that "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[,] [e]vidence of the conviction is admissible only if . . . its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect . . . ." *Fed.R.Evid.* 609. As we noted, New Jersey declined to adopt this model when it revised its evidence rules in 1993.

■ We conclude that the approach outlined in *McBride* is appropriate and hold that the trial court in this matter did not abuse its discretion when it viewed defendant's intervening convic-

tions for disorderly persons offenses as removing the bar to admission of defendant's prior criminal convictions as too remote. We decline to accept defendant's invitation to abandon *N.J.R.E.* 609 in favor of the approach utilized in *Federal Rule of Evidence* 609 under which a conviction more than ten years old is presumptively inadmissible to impeach a defendant's credibility. Defendant has not presented persuasive reasons why we should depart from the practice New Jersey has followed consistently for many years.

■ Further, we reject defendant's argument that his convictions for possession of narcotics were not "serious" and thus should not have been admitted. In our view, if we were to accept this argument, we would tread perilously close to judicial nullification of legislative declarations. We decline to do so.

■ Additionally, we decline to address defendant's argument under *N.J.R.E.* 403. Defendant failed to present this argument at any earlier stage, and it is neither jurisdictional in nature nor does it substantially implicate the public interest. *State v. Robinson,* 200 *N.J.* 1, 20–22, 974 *A.*2d 1057 (2009). Defendant may not present entirely new arguments to this Court. *See State v. Gandhi,* 201 *N.J.* 161, 191, 989 *A.*2d 256 (2010).

■ Finally, we decline to address the suggestion of amicus that in computing the lapse of time, the starting date should be not the date of conviction itself but the date upon which the defendant was released from incarceration. An amicus must accept the case as the parties have presented it to the Court and may not raise new issues the parties have not. *Gandhi, supra,* 201 *N.J.* at 191, 989 *A.*2d 256; *State v. Echols,* 199 *N.J.* 344, 356 n.2, 972 *A.*2d 1091 (2009).

## IV.

For the reasons stated, defendant's convictions are affirmed. The question of whether *N.J.R.E.* 609 should be modified is referred to the Supreme Court Committee on Evidence.

Justice LONG, dissenting.

*N.J.S.A.* 2C:1–4 classifies the offenses prohibited by our criminal code. In relevant part, that statute states:

a. An offense defined by this code or by any other statute of this State, for which a sentence of imprisonment in excess of 6 months is authorized, constitutes a *crime* within the meaning of the Constitution of this State. *Crimes* are designated in this code as being of the first, second, third or fourth degree.

b. An offense is a disorderly persons offense if it is so designated in this code or in a statute other than this code. An offense is a petty disorderly persons offense if it is so designated in this code or in a statute other than this code. *Disorderly persons offenses and petty disorderly persons offenses are petty offenses and are not crimes* within the meaning of the Constitution of this State. There shall be no right to indictment by a grand jury nor any right to trial by jury on such offenses. *Conviction of such offenses shall not give rise to any disability or legal disadvantage based on conviction of a crime.*

[*N.J.S.A.* 2C:1–4(a), (b) (emphasis added).]

*N.J.R.E.* 609, in turn, provides: "For the purpose of affecting the credibility of any witness, the witness' *conviction of a crime* shall be admitted unless excluded by the judge as remote or for other causes." (Emphasis added).

The Legislature was aware of the definition of "crime" when it used that term in the rules of evidence. Taken at face value, the rule means what it says: that a conviction for a crime, an offense "for which a sentence of imprisonment in excess of 6 months is authorized," *N.J.S.A.* 2C:1–4(a), is the only conviction that can be used for impeachment purposes. Put another way, the use of disorderly persons convictions, which "are *not* crimes," to place a defendant at a "legal disadvantage" in a credibility calculus is not permitted. *N.J.S.A.* 2C:1–4(b) (emphasis added).

That standard is equally applicable where the issue is whether a defendant's recent crimes can be considered to "bridge the gap" between his remote criminal convictions and the crime for which he is being tried. As we pointed out in *Sands*, "[i]f a person has been convicted of a series of *crimes* through the years, then conviction of the earliest *crime*, although committed many years before, as well as intervening convictions, should be admissible" for credibility purposes. *State v. Sands*, 76 *N.J.* 127, 145, 386 *A*.2d 378 (1978) (emphasis added). We knew the meaning of

"crime" when we wrote those words.[1] Thus, the use of disorderly persons offenses to "bridge the gap" in this case was unauthorized, not only by the statute and the evidence rule, but also by our prior jurisprudence.

The trial judge apparently understood that prohibition. It was for that reason that he kept defendant's disorderly persons convictions a secret from the jury, permitting those offenses to "bridge the gap" only in his own mind. The effect of that ruling was to permit the jury to consider defendant's fourteen-year-old drug convictions, which otherwise would not have passed a remoteness test or a *N.J.R.E.* 403 analysis.

I further disagree with the majority opinion insofar as it declared it to be within the court's "discretion" to utilize disorderly persons offenses to render proximate otherwise remote criminal convictions. Because of that "discretion," the opinion suggests that some deference is owed the trial judge. Not so. The question of whether the court has the power to consider disorderly persons convictions in a remoteness calculus, in light of the statute and the evidence rule, is a purely legal one. *See Twp. of Holmdel v. N.J. Hwy. Auth.*, 190 *N.J.* 74, 86, 918 *A.*2d 603 (2007) (stating trial court's statutory interpretation not entitled to deference and reviewed de novo); *Manalapan Realty, L.P. v. Manalapan Twp. Comm.*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) (citations omitted) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."). Because no discretion is involved, no deference is warranted.

---

[1] *Sands* was decided under Title 2A, which provided: "For the purpose of affecting the credibility of any witness, his interest in the result of the action, proceeding or matter or his *conviction of any crime* may be shown by examination or otherwise, and his answers may be contradicted by other evidence." *N.J.S.A.* 2A:81–12 (emphasis added). Offenses that constituted crimes were specifically codified in *N.J.S.A.* 2A:85–1 to 151–63. In contrast, "a person adjudicated a disorderly person shall be deemed to have been guilty of a petty offense and shall be punished by imprisonment ... for not more than 6 months...." *N.J.S.A.* 2A:169–4.

The most problematic aspect of the Court's ruling today is its effect on the search for truth. Because of the prejudicial consequences of a prior conviction on a jury's determination, *see State v. Stevens*, 115 *N.J.* 289, 302, 558 *A.*2d 833 (1989),[2] many defendants simply will not take the risk of testifying. The Court's opinion today expands the credibility use of prior convictions and directly counters what has been the uniform approach of our case law on that subject. Indeed, in recognition of the prejudicial effect of prior convictions on the truth-seeking function, we have consistently moved, before today, in the direction of cabining-off the use of such convictions. *See Sands, supra*, 76 *N.J.* at 142, 386 *A.*2d 378 (citation omitted) (rejecting mandatory admissibility of prior convictions because it "unquestionably discourages many defendants from taking the stand, and the fact-finding process will be enhanced to the extent that defendants are encouraged to and do testify[ ]"); *State v. Hamilton*, 193 *N.J.* 255, 269, 937 *A.*2d 965 (2008) (holding trial courts have discretionary authority to "sanitize" prior conviction evidence "in any other circumstance[s] that pose[ ] a risk of undue prejudice to a defendant[ ]"); *State v. Brunson*, 132 *N.J.* 377, 391, 625 *A.*2d 1085 (1993) (requiring courts to "sanitize" prior conviction for same or similar offense by limiting impeachment evidence to degree of crime and date of offense).

Finally, I would refer this matter to the standing Committee on Rules of Evidence for a fresh look at *Fed.R.Evid.* 609 which, in my estimation, provides a more nuanced and fairer approach to impeachment by conviction. In particular, the Committee should study *Fed.R.Evid.* 609(b)(1), which provides a bright-line exclusion

---

[2] In *Stevens*, we noted "that other-crime evidence has a unique tendency to turn a jury against the defendant." 115 *N.J.* at 302, 558 *A.*2d 833; *see also State v. Brunson*, 132 *N.J.* 377, 385–86, 625 *A.*2d 1085 (1993) (discussing scholarly works that assert prior-conviction evidence is highly prejudicial and carries risk that juries will consider that evidence as proof of guilt); *State v. Cofield*, 127 *N.J.* 328, 336, 605 *A.*2d 230 (1992) (noting inherent prejudice in other-crimes evidence that a jury may be influenced to return a guilty verdict because it considers defendant to be a criminal).

of convictions over ten years old unless the State bears the burden of proving, by specific facts, that the probative value of the conviction "substantially" outweighs its prejudicial effect. For me, such an approach best accommodates the truth seeking function.

For all those reasons, I have concluded that the trial judge's use of defendant's disorderly persons convictions to bridge the remoteness gap was error. That error left defendant with the Hobson's choice of facing the improperly admitted remote convictions or remaining mute. Accordingly, I respectfully dissent.

*For affirmance*—Justices LaVECCHIA, HOENS, PATTERSON, and Judge WEFING (temporarily assigned)—4.

*For reversal*—Chief Justice RABNER and Justices LONG and ALBIN—3.